No. 46,681

G. E. Cox, *Appellee*, v. Chas. Cason, Jr., *Appellant*.

(508 P. 2d 499)

Opinion filed April 7, 1973.

*Michael T. Dreiling*, of Vance, Hobble, Neubauer, Nordling & Sharp, of Liberal, argued the cause, and *Chas. Vance*, of the same firm, was on the brief for the appellant.

*Arthur B. McKinley*, of Sublette, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from judgment against defendant Cason for $4,813.31, representing the balance of rent due on an oral farm lease.

In March, 1966, Cox and Cason reached an oral agreement that Cason would lease and farm approximately 530 acres owned by Cox. Wheat was to be planted on 361 acres. The agreement was reduced to writing but was not executed. This controversy centers around the total amount of rent Cason agreed to pay for the wheat acreage and an ambiguous understanding that Cox was to receive all the government payments on the land.

Cox contends Cason agreed to pay $30.00 per acre rent on the wheat land—$15.00 of the $30.00 to be paid in cash and the addi-

tional $15.00 to be paid by assigning to Cox the wheat marketing certificates which amounted to approximately $15.00 per acre.

In March, 1967, Cox sued Cason for non-payment of rent. In July, 1967, the parties dismissed that suit. We are not given the terms of settlement, but Cason apparently paid Cox $15.00 per acre cash rent and Cox assumed he was to have the wheat marketing certificates as additional rent.

In August, 1967, the Haskell County ASCS committee refused possession of the certificates to Cox, saying they must be paid to the producer of the crop and federal regulations prohibit paying them to one who is a lessor for cash. Cox then demanded that Cason obtain the certificates, endorse them, and deliver them to him. Cason refused and the suit from which this appeal is taken was filed October 5, 1967.

Cox's petition asked for a declaratory judgment interpreting the terms of the lease and awarding the certificates to him. Cason's answer denied any agreement to give Cox the wheat certificates, but admitted he agreed to give Cox government payments on diverted acres as payment for use of an irrigation well.

The trial court found Cox could not claim the wheat certificates under government regulations and granted Cox thirty days to amend his petition. The amended petition seeks the money equivalent of the certificates and is the basis for the appealed judgment. Cason contends Cox should not be permitted to obtain the certificates indirectly in the guise of money equivalent, and the court should not enforce the contract since it is against public policy.

The trial court held the agreement was not void as against public policy and entered judgment for an amount equal to the wheat certificate payments, or $4,813.31. The petition prayed for judgment in the sum of $5,416.50, which represented 361.1 acres of wheat, multiplied by $15.00 per acre rent. The trial court's judgment necessarily implies a finding that additional rent was due and the parties had agreed the balance of the rent was to equal the amount of the wheat certificates.

The findings of the trial court which are supported by substantial competent evidence will not be set aside on appellate review. (*Brown v. Continental Casualty Co.*, 209 Kan. 632, 498 P. 2d 26.) Reviewing the testimony most favorable to the plaintiff we find Cox testified he and Cason discussed payments on the wheat crop and he gave Cason a choice of paying $30.00 and taking the government payments, or paying $15.00 and letting Cox take

the government payments. He testified they didn't spell out what government payments they meant, but Cox assumed the wheat marketing certificates were the only government payments available on that land. Cox testified they both speculated the government payments under the wheat marketing certificates would be equal to about half the $30.00 per acre which is why they set the cash payment at $15.00 per acre.

Another witness, Ray Ellsaesser, from whom Cason had also rented land, testified the customary rental for irrigated land was $30.00 per acre and the Cox land was irrigated.

On cross-examination, Cason was asked whether he denied agreeing to pay $30.00 per acre rent and his answer was "No."

In view of the foregoing, we have no hesitancy in concluding the trial court's judgment is supported by substantial competent evidence.

Appellant's statement of points sufficiently explains the gist of his appeal. They are:

"1. The Court erred in permitting Plaintiff to recover the amount of the Price Support Certificates paid to the Defendant by the Department of Agriculture for the reason that any Contract which puts the payment into hands, other than those designated by the regulations to receive it, is void and against public policy. The provision that the payments cannot be assigned is intended to prevent the landlord from exacting from a tenant, a Contract which diverts the payment from the tenant to the landlord.

"2. The Court's judgment permitting the landlord to recover all of the Price Support Certificate payments results in the evasion of the regulations and would permit the landlords to deprive the tenants of any benefit of the Farm Program in violation of the policies of the United States in establishing such a Program.

.   .   .   .   .   .   .   .   .   .   .   .   .

"4. The Price Support program is not intended for the exclusive benefit of landlords and the regulations providing that the Certificates are to follow the wheat and are not assignable were intended to prevent exaction by landlords of all of the benefits of the Farm Program."

Appellant cites sections of 7 CFR (Rev'd January 1, 1967) which provided:

"§ 728.504 Division of certificates between producers.

"(a) Wheat marketing certificates issued under § 728.502 shall be divided among producers on an eligible farm on the same basis as such producers share in the current year's wheat crop produced on the farm, or the proceeds therefrom,  .  .  ."  (p. 457.)

\*   \*   \*   \*

"§ 728.507 Additional provisions and requirements relative to tenants and sharecroppers.

"(*a*) Form ASCS-477 shall not be approved by the county committee or diversion payments made or wheat marketing certificates issued for any individual farm if the county committee determines that:

.    .    .    .    .    .    .    .    .    .    .    .

"(3) There exists between the operator or landlord and any tenant or sharecropper any lease, contract, agreement or understanding unfairly exacted or required by the operator or landlord which was entered into in anticipation of participating in the program, the effect of which is:

"(*i*) To force the tenant or sharecropper to pay over to the landlord or operator any payment earned by him under the program;

"(*ii*) To change the status of any tenant or sharecropper so as to deprive him of any payment or right which he would otherwise have had under the program;

"(*iii*) To reduce the size of the tenant's or sharecropper's producer unit; or

"(*iv*) To increase the rent to be paid by the tenant or decrease the share of the crop or its proceeds to be received by the sharecropper." (p. 461.)

❖    ❖    ❖    ❖

"§ 728.510 Setoffs and assignments.

.    .    .    .    .    .    .    .    .    .    .    .

"(*b*) *Assignments.* The right to receive wheat marketing certificates and diversion payments under the regulations in this subpart may be assigned only to the Farmers Home Administration in accordance with instructions issued by the Deputy Administrator." (p. 462.)

Even though a federal regulation is involved, this court has jurisdiction to decide the claims of private parties arising from a violation of duties and obligations under contracts executed by them. (*Thomas v. Dudrey,* 208 Kan. 684, 494 P. 2d 1039; *Dickson v. Edwards,* 293 F. 2d 211 [1961]; *Caulfield v. U. S. Department of Agriculture,* 293 F. 2d 217 [1961].)

We have no intention in this opinion of analyzing the federal regulations and determining under what facts and circumstances farm lease agreements are void as against public policy. We limit our discussion to the agreement involved in this action, which provides the cash rent to be paid by the lessee is determined in part by the amount of the price support certificates. We find applicable rules of construction in our decisions. In *Kipp v. Goffe & Carkener,* 144 Kan. 95, 58 P. 2d 102, we approved a rule that in a contract which is fairly susceptible of two constructions, one making it legal and the other illegal, we should apply the construction which would make it effective and legal. In *Foltz v. Struxness,* 168 Kan. 714, 215 P. 2d 133, we held it is the duty of the courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek

loopholes and technical legal grounds for defeating their intended purpose.

We recognize provisions for participation in the farm program are designed to protect the producer (tenant). The judgment of the trial court does not offend any of the rules regulating the farm program. It does not place any ownership of the certificates in the landowner. It does not require any transfer of the certificates to the landowner; neither does it create any encumbrance on the certificates in favor of the landowner. At most, it determines the rent is to be based on the amount of the issued certificates.

We find no reported cases deciding the issue of assignment of wheat marketing certificates for rent, but assignment of other government farm payments for rent has been litigated. (*Barlow v. Collins*, 398 F. 2d 398 [1968], 397 U. S. 159, 25 L. Ed. 2d 192, 90 S. Ct. 832; *Caulfield v. U. S. Department of Agriculture*, supra.) The public policy sought to be protected by prohibiting assignment for rent has been to guard against landlords raising the rent based upon the amount of anticipated price support payments to tenants. By such practice landlords transfer to themselves, benefits intended by Congress for producers. This practice is prohibited by the wheat support program. In this case, however, the rent agreed upon was not raised or out of line with the community standards. The court found the parties had agreed to $30.00 per acre, the current rate for cash rent. We conclude no other decision could have done justice between the parties. This agreement was not tainted with fraud or overreaching on the part of the landlord, and justifies application of the rules of interpretation previously set forth in *Kipp* and *Foltz*.

Appellant's third point on appeal reads as follows:

"3. The Court on the 10th day of March, 1969, found that the Plaintiff was not entitled to recover the Wheat Certificate payments and this ruling had become the law of the case and the Court had no jurisdiction to change it and the action of the Court in reversing himself on this point by reason of an argument he had heard in some other case, took the Defendant completely by surprise at a time and deprived Defendant of a fair trial because his attorneys could not answer an argument which they had not heard and which controlled the Judge's mind."

The ruling of the trial court was based on Cason's motion for summary judgment. The motion was sustained against the following parts of Cox's petition:

"1. As to the prayer of the plaintiff for declaratory judgment awarding the wheat certificate payment to the plaintiff; and

"2. As to the prayer for such judgment as is necessary to require said defendant to endorse and deliver the same to the plaintiff."

Cason argues the trial court reversed itself by entering final judgment for the amount subsequently determined to be the cash equivalent of the wheat certificates. The effect of sustaining Cason's motion for summary judgment was to deny Cox the equitable remedy of specific performance of the contract. In allowing Cox to amend his petition, the court permitted him to seek his remedy at law under the rental contract. As we view the summary judgment and the final judgment, there is no inconsistency.

Judgment is affirmed.