No. 48,471

EASTERN DISTRIBUTING CO., INC., *Appellee,* v. TERRY A. FLYNN, *Appellant.*

(567 P.2d 1371)

Opinion filed July 11, 1977.

*Alexander B. Mitchell* and *James W. Sargent,* of Sargent, Klenda & Glickman, of Wichita, argued the cause and were on the brief for the appellant.

*Merle E. Parks,* of Kansas City, argued the cause, and *J. F. Steineger, Jr.,* of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action for injunctive relief brought by Eastern Distributing Co., Inc., plaintiff-appellee (hereafter re-

ferred to as Eastern or plaintiff), a wholesale liquor distributor, against one of its former route salesmen, Terry A. Flynn, defendant-appellant, to enforce certain antidisclosure and anticompetition covenants contained in a written contract of employment executed by the parties. Trial was to the court at the conclusion of which defendant was enjoined for one year after April 29, 1976, from disclosing the list of Eastern's customers or any information relative thereto, and from engaging in a route salesman position or any such similar position for any competitor of Eastern in the counties of Atchison, Douglas, Leavenworth and Wyandotte, for the same one-year period.

Previous to his employment under the contract here in question, defendant had worked for Eastern as an office employee. In 1969 defendant left Eastern for a job with Hiram Walker Distilling Company. After two and one-half years with Hiram Walker defendant sought reemployment with Eastern as a route salesman. After negotiations with Gene Baird, president of Eastern, an agreement was reached and the contract in question was submitted to defendant. After consulting with his attorney, defendant signed the contract. Defendant was assigned certain territory and customers who had been serviced by another Eastern salesman who accompanied defendant on the route for a week.

Early in 1976 defendant became dissatisfied with his employment. He sent out numerous résumés and interviewed for jobs in and out of the liquor industry, within and without the Kansas City area. On April 29, 1976, he left Eastern and took a position as a route salesman with Grant-Billingsley, a liquor distributor and competitor of Eastern. Defendant immediately began to service the same customers which he had previously served for Eastern. This litigation was then initiated by Eastern.

The contract recited in detail the duties and benefits of the employee, the various terms of employment, and set out the mutual obligations of the parties. Concerning the employer's interest the contract reads:

"WHEREAS, the employer has a substantial investment in the employee by way of training, maintenance of sales proficiency, sales aids and information; and

"WHEREAS, the employee represents the employer and by virtue of his sales position has been designated as official representative to the retailers and customers in his area for employer and the resultant personal contact with customers has established a valuable asset for the employer through the employee, which valuable personal relationship will be, or has been, established over a long period

of time during which the employee has received compensation from the employer; and

"WHEREAS, the employer feels that this asset developed over a period of time at the expense of the employer should belong to and be the sole property of the employers. . . ."

The covenants, which are the crux of this litigation, are contained in paragraphs six and seven of the contract and read as follows:

"6. Disclosure of Information. The employee recognizes and acknowledges that the list of the employer's customers, and the personal relationship established with them, as it may exist from time to time, are valuable, special, and unique assets of the employer's business. The employee will not, during or after his employment, solicit or disclose the list of the employer's customers or any part thereof to any person, firm, corporation, association or other entity for any reason or purpose whatsoever. In the event of a breach or threatened breach by the employee of the provisions of this paragraph, the employer shall be entitled to an injunction restraining the employee from disclosing, in whole or in part, the list of the employer's customers, or from rendering any services to any person, firm, corporation, association, or other entity to whom such list has been disclosed, whole or in part, directly or indirectly, or is threatened to be so disclosed. Nothing herein contained shall be construed as prohibiting the employer from pursuing any other remedies available to the employer for such breach or threatened breach, including recovery of damages from the employee.

"7. Restrictive Covenant. For a period of one (1) year after any termination of employment under this agreement, (except if employment is terminated by employer under paragraph (a) of Section 2. of this agreement), the employee will not, within a radius of fifty (50) miles from the boundaries of any sales territory designated for the employee and serviced by the employee within one year preceding such termination, directly or indirectly, own, operate, manage, control, be employed by, participate in, or be connected in any manner with the ownership, operation, management, or control of any business in this State, similar to the type of business conducted by the employer at the time of the termination of employment under this agreement, and that he will not either, directly or indirectly, on his own account or in the service of others, engage in the sale, distribution, or promotion of the sale of products of the same or similar type which he has been selling, distributing, and promotion [sic] for sale for the employer within a radius of fifty (50) miles from the boundaries of the sales territory designated for the employee and serviced by the employee within one year preceding termination hereunder. It is understood that in the event of any breach or threatened breach of the provision of this paragraph, the employer may assert his rights hereunder by enjoining activities of the employee in breach or threatened breach hereof, or by an action for damages or by both, and that nothing contained herein shall be construed as prohibiting the employer from pursuing any other remedy available to the employer for any such breach or threated (sic) breach of the provisions of this paragraph."

After hearing the evidence, which consisted primarily of the

testimony of defendant and Mr. Baird, president of Eastern, the trial court made extensive findings of fact and conclusions of law. The court found the facts to be generally as recited herein. In findings number nine and ten the court specifically found:

"9. The business of plaintiff involves no secret list or information on retail establishments. Prices are controlled and no monetarily valued services can be performed by a wholesaler for a retailer. No advertising is allowed and sales are by cash.

"10. Plaintiff's projected loss if the restrictions are not enforced amounted to $30,000 gross profit. Net loss was not determined."

### The trial court's conclusions of law read as follows:

"1. Jurisdiction and venue are proper.

"2. The contract negotiated between the parties with advice of counsel is mutually enforceable and there is mutuality of obligation. It likewise is to be strictly construed against the employer as set forth in the Lovelace case, 208 Ks. 538, being an employment contract. Contracts should also be enforced if freely and voluntarily entered into with full knowledge, with the presumption favoring legality. 'Reasonableness' the criteria.

"3. The Court concludes that a wholesale liquor dealer, having little or nothing to set him apart from any other—because of State regulation and public knowledge—must build his reputation through personal contacts by his route salesmen. Though retail store ownership is readily available among the industry, the location of the owners, their other employment, hours of availability, and peculiarities, vis-a-vis the store manager and operator, would constitute information obtainable by a competitor but not without difficulty. This knowledge, developed over a period of years, is what plaintiff bargained for and is entitled to protect.

"4. The one-year restriction the Court does not find unreasonable, hence we look to the territory and employment restriction included. The Court concludes, under the Foltz decision 168 Ks. 714, that the territory and future employment conditions are unreasonable and not reasonably necessary to afford plaintiff protection. Under the Court's equitable powers, this area is reduced to the counties of Atchison, Douglas, Leavenworth and Wyandotte, and further reduced to only include sales activities of a similar vein. Johnson county is not included for the reason that the testimony reflected defendant's only contacts there came from emergency situations. The Court finds no violation of public policy.

"The above conclusions are not reached without due emphasis being given to the role of stare decisis in our law, and its need. In the Court's mind, the distinguishing characteristics from the Lovelace case are:

"A. There was mutuality of obligations, the plaintiff paying one-third of a year's salary upon termination.

"B. The one-year restriction was not unreasonable.

"C. The bargaining between the parties prior to defendant's employment by plaintiff was done under advice of counsel, with defendant being familiar with plaintiff's operation and policies from his earlier two year employment.

"D. Defendant's current employer had not, except to a slight extent, competed

with plaintiff in defendant's sales territory prior hereto. This relates to my conclusion paragraph 3.

"E. Defendant's offers of other employment, during his commission increase negotiations with plaintiff, and his seeking of counsel prior to accepting employment by plaintiff's competitor within the same territory indicates to the Court that this move was done fully understanding its possible consequences."

On a motion to amend findings and conclusions, the trial court clarified its conclusion number four with respect to time limitation on disclosure of information provided for in paragraph six of the contract. On the motion to amend, the court ruled:

"1(d). The Court considered defendant's contract and, in particular paragraph 6 (Disclosure), to fall within the one-year restriction of paragraph 7. This follows previous guidelines set forth by the Supreme Court that a contract must be interpreted as a whole."

In other words, the trial court's limitation of one year was applied to paragraph six as a result of construing the contract as a whole and in particular with regard to the one-year limitation provided for in paragraph seven, rather than on the premise paragraph six was unreasonable in that a definite time limitation was not provided. As to the area restriction, the court found the fifty-mile radius provision to be unnecessary for the reasonable protection of plaintiff's interest and reduced the restricted territory to what was substantially the area which encompassed customers served by defendant when employed by plaintiff.

Before considering specific points raised by defendant on appeal, we should review some general principles which this court has recognized in previous decisions dealing with covenants not to compete in agreements of various types. It has become well-established that a noncompetition clause is valid if it is ancillary to any lawful contract, but it is subject to the test of reasonableness of the covenant and whether it is inimical to the public welfare. (*H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205; *Foltz v. Struxness,* 168 Kan. 714, 215 P.2d 133; and *John Lucas & Co. v. Evans,* 141 Kan. 57, 40 P.2d 359.) With respect to time and space provisions in such covenants we adopted what was denominated the doctrine of reasonableness in *Foltz* and explained that the real test is never whether there is any restraint, but always whether the restraint is reasonable under the facts and circumstances of the particular case. In *Lovelace* we noted that in determining the reasonableness of a restrictive covenant a distinction is sometimes made between covenants incident to an

employment contract, such as that at bar, and those ancillary to a sale or other transfer of a business or property. We cited reasons for the distinction enumerated in *Arthur Murray Dance Studios of Cleveland, Inc., v. Witter,* 62 Ohio Law Abstract 17, 105 N.E.2d 685, and concluded that the distinction should be made. It is obvious from the findings and conclusions of the trial court herein that it was fully aware of, and had carefully analyzed, our opinions in *Foltz* and *Lovelace.* In conclusion number two the trial court recognized the principles laid down in *Lovelace* that a contract if freely and voluntarily entered into with full knowledge should be enforced with a presumption favoring legality and that the test is one of reasonableness. In noting the contract is to be construed strictly against the employer, the court recognized the distinction made in *Lovelace* as between an employment contract and one for the sale of a business with respect to restrictive covenants.

Finally, it should be observed there is no contention here that the restrictive covenants lack good consideration or are not otherwise incidental to and in support of a lawful contract of employment.

In the first three points specified on appeal, defendant contends the trial court erred in concluding that Eastern had a legitimate interest to protect by enforcement of the covenants. It is well-settled law that the mere desire to prevent ordinary competition does not qualify as a legitimate interest of an employer and a restrictive covenant is unreasonable if the real object is merely to avoid such ordinary competition. (43 A.L.R.2d, Anno., Employee—Restrictive Covenant—Area, § 23[a] and [b], pp. 94, 159-162.) However, it is also a well-recognized principle that "customer contacts" is a legitimate interest to be protected by an employer. On this point the author of the annotation referred to says:

"The most frequent and probably also the most important of the employer's legitimate interests sought to be protected through the enforcement of a restrictive covenant not to compete is the customer contacts which the employer was able to develop for his business. Protection of this asset against appropriation by an employee is recognized everywhere as an important legitimate interest of the employer." (p. 117.)

It is clear from the import of the language of the instant contract that "customer contacts" was the principal incident which Eastern intended to protect. This leads to the question whether the

evidence is sufficient to support the determination in this regard made by the trial court in conclusion number three.

In a comprehensive treatise, "Employee Agreement Not To Compete," (73 Harvard Law Review, February 1960, No. 4, p. 625.), Professor Harlan M. Blake writes:

> "Courts in most jurisdictions have held that an employer has a sufficient interest in retaining his present customers to support an employee covenant whenever the employee's relationship with customers is such that there is a substantial risk that he may be able to divert all or part of their business. This is the so-called 'customer contact' basis.
>
> "The 'customer contact' basis posits a substantial risk of loss of clientele to an employee because of the nature of his work. Whether the risk will be sufficiently great to warrant a restriction, and how broad a restriction will be permitted, depends upon the extent to which the employee is likely to be identified in the customer's mind with the product or service being sold. The most important factors seem to be (1) the frequency of the employee's contacts with customers and whether they are the employer's only relationships with those customers, (2) the locale of the contact, and (3) perhaps most important, the nature of the functions performed by the employee." (pp. 657-659.)

In exemplifying the three factors, Professor Blake points out that if contacts are infrequent and irregular there may be no sufficient risk to the employer to support any degree of restraint and further that frequency of contact may also affect the permissible period of restraint, the important consideration being that the employer should be given a reasonable period of time in which to overcome the former employee's personal hold over the customers. With respect to locale of the contact the important factor is whether the contact is made at the employer's place of business, which involves less risk to the employer, or at the customer's home or business establishment, which is more likely to direct the customer's loyalty primarily to the employee and support some degree of restraint. As to the nature of the employee's activities, Professor Blake says:

> ". . . The risk to the employer reaches a maximum in situations in which the employee must work closely with the client or customer over a long period of time, especially when his services are a significant part of the total transaction." (p. 661.)

It is also generally recognized that the "customer contacts" theory gains added weight where the business is one in which the employee is the sole or primary contact with the customers and in which a close personal relationship with them is fostered, enabling the employee to control such business as a personal asset.

(*Silver v. Goldberger,* 231 Md. 1, 188 A.2d 155; *Weber v. Hesse Envelope Company* (Tex. Civ. App.) 342 S.W.2d 652; *Dunfey Realty Co. v. Enwright,* 101 N.H. 195, 138 A.2d 80.)

We have examined cases cited by defendant and find them to be distinguishable or not persuasive when applied to the facts of the instant case. Defendant cites *Clark Paper & Mfg. Co. v. Stenacher,* 236 N.Y. 312, 140 N.E. 708 [1923], wherein a trial court's injunction barring a wrapping paper salesman from entering the employment of a competitor of his former employer was reversed. The court held that an ordinary salesman's contract not to enter a competitor's employ for eight years was unreasonable in restraint of trade and personal liberty in the absence of evidence of secret or valuable information obtained by him which he might impart. However, the court also rested its decision on the fact that the contract as alleged by the plaintiff employer had not been proved in that the time at which the eight-year period was to commence had never been agreed upon. We find the case of little persuasion in the light of the facts and circumstances at bar.

In *Nesko Corporation v. Fontaine,* 19 Conn. Supp. 160, 110 A.2d 631, the Court of Common Pleas of Connecticut sustained a demurrer to plaintiff's complaint and refused to enjoin a salesman (storm doors and windows) on the ground the contract with his former employer covered a territory far in excess of that in which the former employee did business. The Connecticut court, as did the trial court in *Lovelace,* held the restrictive covenant to be unreasonable as to the defendant, unnecessary to the plaintiff and prejudicial to the public. Such findings were not made by the trial court in the instant case.

In *Mathews Paint Co. v. Seaside Paint Co.,* 148 Cal. App. 2d 168, 306 P.2d 113, the employer appealed from the trial court's order sustaining a demurrer to the complaint. There is no mention of a contract in the court's discussion of the allegations of the complaint. Apparently, the theory of the case was tortious interference with plaintiff's relationship with its customers.

The case at bar comes to this court after a full trial on the merits below. While the ultimate determination whether a legitimate interest subject to protection is shown may be a matter of law, the underlying facts are to be determined by the trial court after hearing the testimony presented. In conclusion of law number three the trial court determined that Eastern had an interest

entitled to protection, but the findings of the court leading up to such determination were actually findings of fact based on testimony. There is ample evidence, in particular the testimony of Gene Baird, to support those findings. It has long been a fundamental rule of appellate review that this court is not authorized to redetermine issues of fact that are supported by some evidence. (*Landrum v. Taylor,* 217 Kan. 113, 535 P.2d 406; *Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, 524 P.2d 690; and *Sullivan v. Sullivan,* 196 Kan. 705, 413 P.2d 988.)

It is true that Eastern's business is highly regulated by a state agency and that there are no secret customer lists nor other trade secrets involved in defendant's employment since such matters are of public record. The existence of trade secrets as evidence of enticing customers from a former employer is sometimes relevant, but not essential, to injunctive relief in a suit brought for breach of covenant not to compete. (*House of Tools and Engineering, Inc. v. Price,* [Mo. App.], 504 S.W.2d 157; *All Stainless, Inc. v. Colby,* 364 Mass. 773, 308 N.E.2d 481; *Bates Chevrolet Corp. v. Haven Chevrolet,* 13 App. Div. 2d 27, 213 N.Y.S.2d 577; *Prentice v. Rowe,* [Mo. App.] 324 S.W.2d 457.)

While the names of customers and their places of business are matters of public record, Baird testified that the hours a licensee is available, and the names and ordering habits of their clerks are not. The evidence disclosed that a salesman's calls on customers were frequent and regular; that they were made at the customer's place of business rather than at Eastern's; and that the salesman was Eastern's principal, if not its sole, contact with customers. It was undisputed that Grant-Billingsley, with the exception of one customer in Lawrence, had done no business in the territory in question, prior to its employment of defendant. Defendant was hired away from Eastern to continue to serve the same customers he knew while employed by Eastern. There is ample evidence to support the trial court's findings which, viewed in the light of the foregoing authorities, establishes a legitimate interest subject to protection by a court of equity.

For his second point defendant contends the trial court erred in judicially modifying the restrictive covenants. This issue is resolved by *Foltz v. Struxness,* 168 Kan. 714, 215 P.2d 133, wherein we held:

"Where the territory designated in a contract, such as that mentioned in the

preceding paragraph, is found to be more extensive than necessary to provide reasonable protection against professional encroachment, courts of equity have the power to reduce such territory to the extent reasonably necessary to insure the contemplated protection, to enforce the contract to that extent and to deny enforcement as to the remainder of the territory.

"It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, when reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose." (Syl. 3 and 5.)

Our holding in *Foltz* accords with the modern majority rule as to both territorial and time restrictions. (See 61 A.L.R.3d, Anno., Enforceability Of Contract Not To Compete, p. 397; 43 A.L.R.2d, Anno., Employee—Restrictive Covenant—Area, p. 94; and 41 A.L.R.2d, Anno., Employee—Restrictive Covenant—Time, p. 15.)

The rule adopted in *Foltz* is supported not only by the many cases collected in the annotations referred to, but also by text writers examining the subject. (See 6A Corbin on Contracts, § 1390, pp. 70-78; 23 Connecticut Bar Journal, "A Note on *Beit v. Beit,*" by Professor Samuel Williston, pp. 40-42.) The underlying principle espoused by the courts and text writers is that equity should not permit an injustice which might result from total rejection of the covenant merely because the court disagrees with an employer's judgment as to what restriction is necessary to protect his business.

Defendant's reliance upon *Lovelace* in support of his position is misplaced. In his argument, defendant appears to view *Lovelace* as being in conflict with *Foltz*. In view of the different procedural posture of the two cases as they reached this court, we see no conflict. In *Lovelace* the trial court viewed the covenant as one intended to prohibit competition by defendant anywhere, and found that unlimited territory restriction was unnecessary and unjustifiable for plaintiff's protection. Consequently, the trial court determined the covenant was unenforceable because of unlimited territorial restriction. In *Foltz* a territorial limitation of one hundred miles from the city of Hutchinson contained in a covenant not to compete ancillary to a contract between two physicians was reduced to a radius of five miles and enforced by the trial court. In rejecting plaintiff's argument for reversal of the trial court's decision in *Lovelace* premised upon the *Foltz* decision we said:

". . . Reliance upon this decision is misplaced in that the facts as well as the posture of the ruling upon appeal are distinguishable from those at bar. . . ." (p. 546.)

In further distinguishing the two cases in the *Lovelace* opinion we said:

". . . [T]he trial court there [in *Foltz*], applying equitable doctrine, reduced the territorial limitation under the particular facts of the case. The trial court here [in *Lovelace*] did not do so and we are not under the circumstances inclined to write a new contract for the parties." (p. 547.)

As evidenced by conclusion number four the trial court in the instant case fully recognized the characteristics distinguishing it from *Lovelace.* The *Lovelace* case does not stand for nonmodification of contracts, nor does it dictate a decision contrary to the trial court's ruling herein.

It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes for defeating their intended purpose. (*Cox v. Cason,* 211 Kan. 789, 508 P.2d 499; and *Foltz v. Struxness,* supra.)

We think the trial court in the exercise of its equitable powers fairly and reasonably reduced the area restriction to only that which was necessary to protect plaintiff's interest. We find no public policy or public interest involved under the facts and circumstances of this case sufficient to avoid or render unenforceable a reasonable restraint.

In his third point, defendant contends the trial court modified the territorial restriction in an inequitable manner. Defendant cites no authority in support of his contention and we believe it is fully answered by what has been said. The trial court's modification is in line with what the evidence disclosed to be a restriction reasonably calculated to protect the interest of plaintiff. We find no abuse of discretion in this regard.

The judgment is affirmed.

SCHROEDER, J., dissenting: I respectfully dissent. In view of (1) the appellee's attempted overreaching in the restrictive covenant, (2) the failure of the restrictive covenant to serve a legitimate purpose, and (3) the statutory and administrative licensing scheme in the sale of liquor, I would reverse the trial court and find the restrictive employment covenant void and unenforceable.

In Kansas, although there is no rigid, absolute norm by which the reasonableness of an employment covenant against competition may be determined, the rights of the promisee, the promisor and the general public are to be taken into account. Both area and time limitations must be reasonable. (*H & R Block, Inc. v. Lovelace,* 208 Kan. 538, Syl. 2, 493 P.2d 205.)

It is clear the area and time limitations initially set out in the covenant were unreasonable. The appellant could be fired without cause at any time. The Sixth Paragraph concerning disclosure of information prohibited the appellant from *ever* selling or disclosing information about the appellee's customers. *No time limitation was imposed.* However, the trial court, on a motion to amend, "interpreted" the contract to apply only the one-year restriction of the Seventh Paragraph.

The Seventh Paragraph prohibited the appellant from being employed or being connected in any manner with another similar business within a 50 mile radius of the appellee's sales territory. This would cover over 40% of this state's population. Under the equitable powers of the trial court, this area was reduced to the counties of Atchison, Douglas, Leavenworth and Wyandotte. The future employment activities were reduced to restrict only sales activities of a similar vein for the appellant.

In *Foltz v. Struxness,* 168 Kan. 714, 215 P.2d 133, this court approved the reduction of a territorial limitation in a covenant not to compete from 100 miles from the City of Hutchinson to a radius of five miles from the City. There, however, the contract was between an older doctor with an established medical practice in Hutchinson and a younger doctor seeking a location. The one-year contract of employment was later to be negotiated to carry on the practice. Both doctors were found by the trial court to have acted in good faith in attempting, although unsuccessfully, to negotiate the partnership agreement. The opinion thus states:

"It is the duty of courts to sustain the legality of contracts in whole or in part *when fairly entered into,* when reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose." (Syl. 5.) (Emphasis added.)

Here the restrictive covenant relates solely to employment and did not contemplate a future partnership, stock ownership or other transfer of the business. Although the trial court found no violation of public policy, I do not believe the initial covenant

was fairly entered into. The trial court was forced to use its equitable powers to reduce the time and area limitations and scope of the restrictive covenants. I would not invoke equity to aid the appellee. Particularly I would not do so where the restrictive covenant specifically provided:

"Entire Agreement. This agreement contains the entire agreement of the parties and may be changed only by written instrument signed by both of the parties hereto."

Secondly, the covenant does not serve a legitimate public interest. As the majority indicates, if the real object of a restrictive employment covenant is merely to remove a competitor and avoid ordinary competition, the covenant is unreasonable because it is not necessary for the protection of a legitimate interest. (See 54 Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 543, pp. 982-983; and Annot., 43 A.L.R. 2d 94, 161 [1955].)

Here there are no trade secrets or secret lists of customers. The identity and location of potential customers is a matter of public knowledge in this state's highly regulated liquor business.

The majority refers to Professor Blake and indicates sufficient "customer contacts" are present here to enforce the covenant. The numerous letters sent by the appellee, Eastern, to its customers indicates clearly Eastern did not depend solely on the appellant to contact its customers. In view of this mailing, the locale of the customer contact is unimportant. The key question on "customer contacts" then is the nature of the appellant's work. Therefore, the opinion in *Clark Paper & Mfg. Co. v. Stenacher,* 236 N.Y. 312, 140 N.E. 708 [1923], reh. denied 236 N.Y. 638, 142 N.E. 316, where a salesman's covenant not to enter into a competitor's employ for eight years was found unreasonable, is particularly appropriate. There the court noted:

"There was nothing peculiar in the nature of the work undertaken for the plaintiff by the defendant. He was engaged to sell wrapping paper. The customers were drummed up from Dun and Bradstreet's books. There was apparently no customer in Rochester using wrapping paper who was not known to be a possible customer to every one of the plaintiff's competitors. There was no secret list of customers or information regarding them which the defendant could reveal to a competitor. . . .

"The defendant had obtained no information regarding the plaintiff's paper business or any other branch of it which he could carry or reveal to others. For $35 a week he sold wrapping paper which his employer purchased in the market. The

plaintiff was not fearful that any of its business methods or secrets would be revealed by the defendant to the George Irish Paper Company, or to any one else; neither did it prove that any damage could possibly come to it by a statement of its business methods. The fact is, the plaintiff sought in this indirect way to prevent by such an agreement its employee from leaving its service and did not primarily seek to enjoin him from imparting information which might do it harm. It anticipated no other harm than might come from a trained salesman carrying his acquired skill elsewhere." (p. 318.)

(See also *Purchasing Assoc. v. Weitz,* 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 [1963].)

The majority's attempt to distinguish this decision as also resting "on the fact that the contract as alleged by the plaintiff employer had not been proved in that the time at which the eight-year period was to commence had never been agreed upon" is not persuasive. The agreement was made November 14, 1914, and was effective January 1, 1915. The salesman left on April 23, 1917. If the eight-year agreement were effective when made, under the facts of that case, it seems clear the court would have refused enforcement. (See also 54 Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 557, pp. 990-991; and Annot., 43 A.L.R.2d 94, 172, 185 [1955].)

Here Eastern could easily have hired another trained salesman and fairly competed in the liquor market. The majority says the appellant was "hired away" from Eastern to serve the same customers he knew while employed by Eastern. The record is clear that it was the appellant who made application for other employment and who initiated the contact with Grant-Billingsley, his new employer. Although Grant-Billingsley had previously done little business in this area, it is the appellee's fear of true competition, rather than an inference that Grant-Billingsley was *hiring away* Eastern's salesman in order to unfairly compete, which should be emphasized.

Third, the restrictive employment covenant, in my opinion, flies in the face of our statutory and administrative licensing scheme for the sale of liquor. A liquor salesman must meet certain criteria and be licensed by the State of Kansas in order to sell liquor to retailers in Kansas. (K.S.A. 1976 Supp. 41-311 and K.A.R. 14-9-1 *et seq.*) Here the appellee *who is licensed to sell liquor anywhere in Kansas* and lives in Kansas City, Kansas, will either have to sell his home and move if he wishes to remain a liquor salesman or search for another type of work. I would not permit a restrictive covenant to contravene state law.

For the reasons stated it is respectfully submitted the trial court should be reversed and the restrictive employment covenant should be held void and unenforceable.