OLIN WATER SERVICES; Performance Products & Services Group; and Olin Corporation, a Virginia Corporation, Plaintiff,

v.

MIDLAND RESEARCH LABORATORIES, INC.; Bruce E. Donigan; and John W. Garmon, Defendants.

No. LR–C–84–845.

United States District Court, E.D. Arkansas, W.D.

Oct. 30, 1984.

Frederick K. Starrett, Ralston & Frieden, Topeka, Kan., for plaintiff.

David R. Schlee, Kansas City, Mo., W.H. Dillahunty, Little Rock, Ark., for defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

HENRY WOODS, District Judge.

On October 19, 1984, plaintiff's application for preliminary injunction came on for hearing. Plaintiff Olin Water Services is a Virginia corporation with its principal place of business in the State of Connecticut. Defendant Midland Research Laboratories, Inc. is a Kansas corporation registered to do business in Arkansas. Defendants Donigan and Garmon are residents of Arkansas. An amount greater than Ten Thousand Dollars ($10,000.00) exclusive of interest and costs is in controversy between the parties. The injunction is requested to prohibit defendants Garmon and Donigan from violating the terms of agreements not to compete which they executed while in the employ of Olin. Both parties put on evidence at the hearing, and the case was taken under advisement to give counsel the opportunity to submit briefs. The matter is now ripe for decision.

The application for preliminary injunction requires evaluation of four criteria: 1) the threat of irreparable harm to Olin if the injunction is not granted; 2) the harm that will result to Midland if the injunction is granted; 3) the probability that Olin will succeed on the merits at the trial of the case; and 4) the public interest. *Dataphase Systems, Inc. v. C L Systems,* 640 F.2d 109 (8th Cir.1981). These four factors will be considered *seriatim*.

█ Olin asserts that it will be irreparably harmed if the requested injunction is not granted. The evidence indicated that Garmon and Donigan, who were originally employed as salesmen by Olin, left that employment and went to work in a sales capacity for Midland. Midland sells the same type of water treatment products and services as does Olin. Shortly after becoming employed by Midland, Donigan began to contact Olin customers in Arkansas, and succeeded in getting several such customers to stop doing business with Olin and start doing business with Midland. These customers had previously been serviced by Donigan or Garmon when they were employed by Olin. Donigan also contacted several active prospects who were on a list of prospects being worked by Olin at the time he left Olin. Garmon claimed not to have contacted any Olin customers, but admitted that he has serviced former Olin customers after they have been converted into Midland customers by Donigan. There was evidence that Garmon and Donigan were Midland's only Arkansas employees, and that Midland was not active in Arkansas prior to hiring Garmon and Donigan. There is no evidence that either Garmon or Donigan has established as Midland customers any businesses that were not formerly Olin customers. The activity of Garmon and Donigan has caused not only immediate loss of customers to Olin, but corresponding loss of business goodwill, references to potential customers, and future business. These losses are continuing in nature and are irreparable.

This Court must next consider the harm that will result to the defendants if the injunction is granted. The evidence showed that there are thousands of potential customers for the services of Olin, Midland, and similar companies in Arkansas. The injunction sought by Olin would impose only a slight restraint on Midland activities. It would prevent only two Midland employees from contacting a very limited number of enterprises in this area. They would be prohibited from contacting existing customers of Olin in Arkansas, now 18 in number; from contacting active or established prospects of Olin in Arkansas who were so established at the time Garmon and Donigan left Olin; and from revealing customer information about Olin customers to other water treatment service providers. No other Midland employee is restrained from contacting Olin customers, and Garmon and Donigan are not restrained from contacting any potential customer except for those who were established prospects of Olin at the time they left Olin. The potential harm to the defendants is virtually nonexistent. Therefore, the second prong of *Dataphase* is satisfied.

The third criterion in *Dataphase* is frequently the most difficult to apply. Is there a probability that Olin will prevail on the merits of its case? A great deal of evidence was presented at the hearing on this matter, and the Court is satisfied that Olin has a very good chance of prevailing on the merits at trial.

 A threshold issue is what law applies to the agreements in question, Arkansas law or Kansas law. A federal court must apply the conflict of laws rules prevailing in the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Arkansas law does not rely on any one factor in determining what law applies to a contract, but looks to several alternatives: the law of the state in which the contract was made, the law of the state in which the contract is performed, the law chosen by the parties, if there is sufficient

nexus; or the "significant contacts" or "center of gravity" test. *Tiffany Industries v. Commercial Grain Bin Co.*, 714 F.2d 799 (8th Cir.1983). Under such a flexible test, either Kansas law or Arkansas law might apply. However, it is the finding of this Court that the agreements in question would probably be upheld under either Arkansas or Kansas law.

 Under both Arkansas and Kansas law, the test of a covenant not to compete is whether the restraint of competition is reasonable under the facts and circumstances of the particular case. *All-State Supply, Inc. v. Fisher*, 252 Ark. 962, 483 S.W.2d 210 (1972); *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, 567 P.2d 1371 (1977). Reasonableness, in turn, hinges on considerations of time and territory. The restraint must not be for an overlylong period of time, nor may it involve an unnecessarily large territory. *Id.* In addition, neither Arkansas nor Kansas will enforce a covenant not to compete if its object is to prevent only ordinary competition, but both jurisdictions recognize that "customer contacts" is a legitimate interest to be protected. *Borden, Inc. v. Huey*, 261 Ark. 313, 547 S.W.2d 760 (1977), *Flynn, supra.* The theory of customer contacts "gains added weight where the business is one in which the employee is the sole or primary contact with the customers and in which a close personal relationship with them is fostered, enabling the employee to control such business as a personal asset." *Flynn, supra,* 567 P.2d at 1377. The only real difference in Arkansas and Kansas law on the subject of covenants not to compete appears to be that Arkansas law will invalidate the entire agreement if any portion of it is found to be objectionable, *Rector-Phillips-Morse, Inc. v. Vroman,* 253 Ark. 750, 489 S.W.2d 1 (1973), whereas Kansas law may strike or alter the objectionable portions and allow the remainder to be effective, *Flynn, supra,* 567 P.2d at 1378–79.

With these principles in mind, the agreements in question must be analyzed. The

relevant provisions of the agreement signed by Garmon are as follows:

> That, in the event of the termination of his employment for any reason ... for a period of twelve (12) months after such termination, he will not, under any circumstances, directly or indirectly, either on his own account or in the service of others, engage in the sale, management ..., distribution or promotion of the sale of products of the kind or nature sold by Olin ... involving prospects or customers within his most recent assigned territory or sales management responsibility area who were established during or previous to his tenure of employment.

The relevant provisions of the agreement signed by Donigan are as follows:

> That, in the event of the termination of his employment for any reason ... for a period of twelve (12) months after such termination, he will not, under any circumstances, directly or indirectly, either on his own account or in the service of others, engage in the sale, distribution or promotion of the sale of products of the kind or nature sold by Olin ..., to prospects or customers within his most recent assigned sales territory who were established during or previous to his tenure of employment.

The agreements not to compete cover a period of one year from termination of employment. This period of restraint has been held to be reasonable both by the Arkansas courts, *All-State Supply, Inc. v. Fisher, supra,* and by the Kansas courts, *Flynn, supra.* This Court must abide by the decision of the state courts as to the reasonability of the period of one year.

As for the territorial restriction, in each case it is defined in terms of the most recent area over which the employee had responsibility, and the Court finds such restriction to be reasonable. Testimony established that personal relationships between the salesperson and the customer, and the service record developed by the salesperson, are of paramount importance in the sale of water treatment products. Garmon and Donigan had the opportunity to develop solid relationships with customers in their assigned territories, and to establish a good track record for service in those territories. There is no question that the water treatment business is one in which it is appropriate to protect customer contacts by means of a covenant not to compete, and the agreements in question restrict competition as narrowly as possible. They are therefore reasonable restraints.

Based on the above analysis, it is clear that what the agreements not to compete seek to restrain is not ordinary competition, but unfair competition. Therefore, under Arkansas or Kansas law, the agreements are valid and enforceable. *Orkin Exterminating Co. of Arkansas v. Murrell,* 212 Ark. 449, 206 S.W.2d 185 (1947); *Flynn, supra.* A necessary concomitant of a finding that only unfair competition is restrained by the agreements is the finding that the agreements do not violate public policy, or infringe the public interest. The public has an interest in restraining unfair competitive practices that is as strong as its interest in permitting freedom in fair competitive practices. The fourth prong of the *Dataphase* test does not militate against entry of the requested injunction.

■ Several issues raised by the defendants remain to be considered. Defendants claim that the agreements in question are not supported by consideration. It was established at the hearing that Garmon and Donigan were employees "at will," and could therefore be terminated at any time for any reason. This Court finds that the continued employment of Garmon and Donigan by Olin was sufficient consideration to support the agreements not to compete signed by them. *Credit Bureau Management Company v. Huie,* 254 F.Supp. 547 (E.D.Ark.1966).

■ Defendants also allege that Olin's request for injunctive relief is barred by laches, unclean hands and estoppel. None of these theories has any support in the law. Midland claims that it has been prejudiced by Olin's delay of some three months

in seeking this injunction, but has presented no proof to support that contention. Garmon and Donigan have been, and remain, at liberty to contact a huge pool of potential customers in Arkansas. Absent prejudice to defendants, the defense of laches is inapplicable. The claim of unclean hands is based on the allegation that Olin wrongfully terminated both Garmon and Donigan. Not only is this contention not supported by the evidence, but it is irrelevant to the issue of whether a preliminary injunction should issue. No case law on point has been cited in support of this argument, and it must be laid to rest.

■ Defendants claim that Olin is estopped to seek injunctive relief because it did not replace Garmon and Donigan after their termination. This Court is unable to perceive how that fact, even if conclusively established, could have any bearing on the violation of Garmon's and Donigan's agreements not to compete, in view of testimony that Olin's Arkansas representative could adequately sell and service all of its existing Arkansas customers even before the piracy of Garmon and Donigan began.

■ Finally, defendants allege that the agreements not to compete, which were signed in 1978, were superseded by agreements signed by Garmon and Donigan in 1982. There is a complete lack of evidence to support this allegation, and it therefore cannot be considered.

It is therefore the finding and the order of this Court that a preliminary injunction should issue to restrain Garmon and Donigan from any further violation of the agreements not to compete which were executed by them. The terms of that injunction are as follows, to-wit:

1) Defendant Garmon is preliminarily enjoined from contacting, prior to July 13, 1985, Olin's Arkansas customers or prospects who were existing or established prior to July 13, 1984, for the purpose of promotion or sale of products of the kind or nature sold by Olin. Garmon is also preliminarily enjoined from revealing to Midland or any other water treatment service provider any customer information which he acquired while in the employ of Olin.

2) Defendant Donigan is preliminarily enjoined from contacting, prior to February 24, 1985, Olin's Arkansas customers or prospects who were existing or established prior to February 24, 1984, for the purpose of promotion or sale of products of the kind or nature sold by Olin. Donigan is also preliminarily enjoined from revealing to Midland or any other water treatment service provider any customer information which he acquired while in the employ of Olin.

3) All defendants and their agents, servants, employees, and anyone acting in concert with them, are preliminarily enjoined from retaining or refusing to return to Olin confidential information and materials acquired during the employment of Garmon and Donigan with Olin, including but not limited to customer lists, prospect files and lists, and all copies thereof.

IT IS FURTHER ORDERED that bond be set in the amount of $10,000.00.