**AMERICAN FIDELITY ASSURANCE CORPORATION, Plaintiff,**

v.

**John LEONARD, Defendant.**

**No. Civ.A. 99–2437–GTV.**

United States District Court, D. Kansas.

Jan. 5, 2000.

Douglas R. Richmond, Michael L. Matula, Armstrong Teasdale LLP, Kansas City, MO, Clark H. Cole, Armstrong Teasdale LLP, St. Louis, MO, for American Fidelity Assurance Corporation, plaintiff.

Douglas M. Weems, Jeffrey M. Place, Spencer, Fane, Britt & Browne, Kansas City, MO, for John Leonard, defendant.

### *MEMORANDUM AND ORDER*

VanBEBBER, District Judge.

Plaintiff filed this lawsuit against defendant alleging breach of an employment agreement and tortious interference with contractual or business relations. The case is before the court on plaintiff's motion for preliminary injunction (Doc. 2). Plaintiff seeks to enjoin defendant from directly or indirectly suggesting, advising, or attempting to persuade any person, entity, school district, firm, or corporation known by defendant to be a policyholder of plaintiff to discontinue, cancel, or fail to renew its policies with plaintiff or to elect an alternate insurance provider to serve as its benefits administrator; directly or

indirectly attempting to persuade any employee of plaintiff to terminate his or her employment with plaintiff; and using confidential information acquired through his prior employment with plaintiff to solicit plaintiff's accounts.

After carefully considering the arguments of counsel, as well as the testimony of witnesses, the exhibits, and the briefing submitted by the parties, the court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### I. Findings of Fact

Plaintiff is in the business of selling group and individual disability insurance, as well as other types of insurance relating to employee benefits. Defendant began working for plaintiff in 1982. On November 6, 1982, defendant signed an agreement in consideration for his employment stating that he will treat as confidential any and all information given to him or learned by him regarding the business of plaintiff, and will refrain from divulging such information absent authorization by plaintiff. The agreement also states that, upon termination, defendant will neither use nor permit to be used any information given or obtained during his employment in the solicitation of policyholders or insureds of plaintiff. Further, the agreement contains the following two clauses serving to restrict defendant's competition with plaintiff upon termination:

4. If for any reason my employment with [plaintiff] is terminated, I will not for a period of two (2) years from the date of termination of my employment directly or indirectly suggest, advise or attempt to persuade any person, firm or corporation known by me to be a policyholder of [plaintiff] to discontinue his or its policy or policies issued by [plaintiff] or to cancel or to not renew any

such policy and to replace it with a policy issued by any other insurance company.

5. If, for any reason my employment with [plaintiff] is terminated, I will not for a period of two (2) years from the date of termination of my employment directly or indirectly persuade or attempt to persuade any employee of [plaintiff] to terminate his or her employment with [plaintiff].

Defendant first worked for plaintiff as a sales representative, servicing accounts primarily in a nine-county region in northeast Kansas.[1] Defendant established a close and personal relationship with the customers of this area. For the last two years of his employment, defendant served as a sales manager, responsible for overseeing and supervising accounts and sales representatives in eastern Kansas, including his former nine-county territory, and a small section of Missouri.

In January 1999, plaintiff implemented a new pay policy requiring each sales representative to meet a specified sales quota which varied according to the representative's salary. Those who received higher salaries were required to meet higher quotas. Defendant believed that this new policy was unlawful because it served to discriminate against the older employees, as the older employees were the ones with the higher salaries, and the policy credited only new business as opposed to renewals, where most of the older employees had a significant amount of existing business to service with little time to foster new accounts.[2] When some of the older employees who were under defendant's management failed to meet their quotas, plaintiff requested that defendant fire them. Defendant refused, and plaintiff terminated his employment on April 30, 1999.

---

1. Defendant's sales territory included Brown, Douglas, Franklin, Jackson, Jefferson, Marshall, Nemaha, Osage, and Shawnee counties.

2. Defendant's belief was also in part because of a remark allegedly made by a regional manager concerning a "need to get rid of the old guys."

On July 25, 1999, defendant began working for one of plaintiff's competitors, Reliant Financial Services ("Reliant"). Within a few months, many of plaintiff's customers in defendant's old sales territory began terminating their business relationships with plaintiff and forming new relationships with Reliant. Specifically, Reliant replaced plaintiff as the Section 125 Administrator benefit provider ("Section 125 provider")[3] for several school districts in defendant's former nine-county sales area, and replaced plaintiff as the defined disability benefit provider in a few school districts in defendant's former nine-county sales area.

Serving as a Section 125 provider is not directly profitable in itself, although it provides several benefits for the insurance provider. For example, serving as the Section 125 provider carries with it an inherent sense of credibility as being the "chosen" provider of the school district. In addition, a Section 125 provider is often allowed to speak about its products and advertise or market the advantages of its products to the exclusion of other benefit providers at administration meetings that are often held during business hours and at which attendance is mandatory for all employees. In some business hours and at which attendance is mandatory for all employees. In some districts, each employee is also required to meet on an individual basis with a representative of the Section 125 provider during business hours. In many cases, non-Section 125 providers are able to solicit business, but they must do so outside of the business hours and only on a strictly voluntarily basis. Moreover, prior election forms (which show what coverage employees elected for in the past) are often made available only to the Section 125 provider.

Serving as a defined disability benefit provider, on the other hand, is directly profitable. Each school district provides a single disability plan from the chosen provider for its employees free of charge. While the employees are free to seek disability benefits through alternative providers, the school districts will not pay for those benefits.

## II. Conclusions of Law

A preliminary injunction is an extraordinary remedy that is granted as the exception rather than the rule. *See Buca, Inc. v. Gambucci's, Inc.,* 18 F.Supp.2d 1193, 1200 (D.Kan.1998) (citing *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984)). "The main purpose of a preliminary injunction is to preserve the status quo pending a trial on the merits in order for the trial court to render a meaningful decision." *Id.* at 1200–01 (citing *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992)). The determination whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.,* 191 F.3d 1224, 1230 (10th Cir.1999) (reviewing the grant of a preliminary injunction for abuse of discretion). To prevail, plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) the threatened harm outweighs the injury that an injunction may impose upon the opposing party; and (4) an injunction is not adverse to the public interest. *See Kansas Health Care Assoc., Inc. v. Kansas Dep't of Soc. & Rehab. Servs.,* 31 F.3d 1536, 1542 (10th Cir.1994).

The Tenth Circuit has adopted a modified interpretation of the "likelihood of success" requirement. If the other requirements for a preliminary injunction are satisfied, the movant can establish the "likelihood of success" requirement merely by showing "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues fair ground for litigation and deserving of more deliberate investigation." *Buca,* 18 F.Supp.2d at 1201 (citing *City of Chanute v. Kansas Gas & Elec. Co.,* 754 F.2d 310 (10th Cir.1985) and *Otero Sav. & Loan Ass'n v. Federal*

---

**3.** "Section 125" refers to 26 U.S.C. § 125.

*Reserve Bank,* 665 F.2d 275 (10th Cir. 1981)).

The court finds that plaintiff has met the four requirements necessary for an injunction only with respect to its claim that, pursuant to the employment agreement that defendant signed on November 6, 1982, defendant should be prohibited from further soliciting its customers.

■ Foremost, plaintiff has demonstrated a reasonable probability that it will eventually prevail on the merits with respect to this claim. "A noncompetition covenant ancillary to an employment contract is valid and enforceable if the restraint is reasonable under the circumstances and not adverse to the public welfare." *Weber v. Tillman,* 259 Kan. 457, 913 P.2d 84, 89 (1996) (citing *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 567 P.2d 1371 (1977)). The restraint must be reasonable under the facts and circumstances of the particular case, and only a legitimate business interest may be protected by a noncompetition covenant. *See Eastern Distributing,* 567 P.2d at 1376. "[T]he mere desire to prevent ordinary competition does not qualify as a legitimate interest of an employer and a restrictive covenant is unreasonable if the real object is merely to avoid such ordinary competition." *Id.* Noncompetition covenants are strictly construed against the employer. *See id.* at 1375. If a noncompetition covenant is found to be more extensive than necessary to provide reasonable protection to the employer, courts have the power to reduce the territorial or time limitations to the extent reasonably necessary to insure the contemplated protection. *See Weber,* 913 P.2d at 95–96; *Eastern Distributing,* 567 P.2d at 1379.

■ In many circumstances, "customer contacts" is a legitimate interest to be protected by a covenant not to compete. This holds true in the case where the employee's relationship with the employer's customers is such that there is a substantial risk that the employee may be able to divert all or part of the business. *See Eastern Distributing,* 567 P.2d at 1376–77 (quoting Professor Harland M. Blake, *Employee Agreement Not To Compete,* 73 Harv.L.Rev. 625 (1960)). " 'Whether the risk will be sufficiently great to warrant a restriction, and how broad a restriction will be permitted, depends upon the extent to which the employee is likely to be identified in the customer's mind with the product or service being sold.' " *Id.* at 1377 (quoting same). The employer should be given a reasonable period of time to overcome the employee's personal hold over the customers. *See id.* (citing same). This is especially true where "the business is one in which the employee is the sole or primary contact with the customers and in which a close personal relationship with them is fostered." *Id.*

■ There is no contention that the covenant not to compete in this case is not supported by consideration or is not otherwise incidental to and in support of a lawful contract of employment. Moreover, the covenant serves to protect a legitimate interest beyond general competition. Defendant served as the sole or primary contact to plaintiff's customers in his former nine-county sales territory, and held a close personal relationship with those customers such that plaintiff's product itself was identified with defendant. The evidence shows that defendant maintained this relationship with those customers both before and after he attained his managerial role.

■ The court determines that the covenant's two-year time limitation is reasonable, but that the covenant's territorial limitation is more broad than necessary to protect plaintiff's interest in its customers. The covenant seeks to prohibit defendant from soliciting all customers of plaintiff, regardless of defendant's former contact or relationship with the customers. Plaintiff has not shown that defendant had sufficient contacts with any of

its other customers outside of the nine-county area adequate to create a protectible interest. The restriction, therefore, is more broad than necessary, and the court reduces the covenant's applicability to defendant's former nine-county sales territory.

■ Defendant contends that the covenant not to compete does not cover activities associated with serving as a Section 125 provider for a school district. The court disagrees. The covenant provides that defendant will not directly or *indirectly* attempt to persuade any person, firm, or corporation known by him to be a policyholder of plaintiff to discontinue, cancel, or not renew his or its policy and to replace it with a policy issued by another insurance company. The evidence makes clear that an insurance provider serves as a Section 125 provider for a school district solely for the purpose of .persuading the employees of that district to purchase insurance policies from its company. The evidence also makes clear that the school districts in this case switched from plaintiff to Reliant as their Section 125 provider in part, if not solely, because of their established relationships with defendant. By using his relationship with plaintiff's customers to secure Reliant as the Section 125 provider, defendant is, at minimum, attempting to persuade the employees of the districts who now have policies with plaintiff to terminate, cancel, or fail to renew those policies, and replace them with policies issued by Reliant. It appears to the court that this is precisely the activity which defendant promised not to do.

Defendant also contends that plaintiff should be equitably estopped from seeking this injunction or any other equitable relief because it comes to the court with unclean hands. Defendant claims that plaintiff has unclean hands because it fired plaintiff in retaliation for engaging in "protected opposition" to a discriminatory practice in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. The court is not convinced at this point, however, that plaintiff comes with unclean hands. Importantly, the court is not convinced that defendant engaged in "protected opposition." Defendant points to *Holdren v. General Motors Corp.*, No. 97–2538–JWL, 1998 WL 990997 (D.Kan. Dec. 7, 1998), for the proposition that defendant engaged in protected opposition when he refused to follow plaintiff's directive and fire the older employees. The *Holdren* case stands as persuasive authority that an employee engages in protected activity when he refuses to follow a directive of the employer that is both legally and factually discriminatory. Defendant has failed to show, however, that plaintiff's directive in this case was both legally and factually discriminatory.

■ In addition to establishing a reasonable probability of success on the merits, plaintiff has successfully shown that, if defendant is not enjoined from breaching the employment agreement, it will suffer irreparable harm. Defendant is engaging in behavior that is likely to result in further loss of customers as well as customer goodwill. The court determines that such activity is causing irreparable harm because of the "extreme difficulty and uncertainty in restoring goodwill among the customers and regaining the business of customers who are being, and will be, induced away or lost by the plaintiff." *Inter–Collegiate Press, Inc. v. Myers*, 519 F.Supp. 765, 770 (D.Kan.1981). Furthermore, the court concludes that any harm the injunction may cause to defendant is outweighed by the injury that a failure to impose the injunction may cause to plaintiff. Defendant is not prohibited from pursuing a livelihood in his chosen profession; he is merely prohibited from directly or indirectly soliciting plaintiff's customers in the limited area in which he established a close, personal relationship with the customers through his employment with plaintiff. Moreover, the court concludes that the public has an interest in upholding valid and enforceable contracts, and preventing unfair competition.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for preliminary injunction (Doc. 2) is granted in part.

IT IS FURTHER BY THE COURT ORDERED that defendant is hereby enjoined from soliciting any customer of plaintiff located in Brown, Douglas, Franklin, Jackson, Jefferson, Marshall, Nemaha, Osage, or Shawnee County, Kansas; defendant shall not (while providing services associated with a Section 125 Administrator or any other capacity) directly or indirectly suggest, advise, or attempt to persuade any person, school district, corporation, association, or other entity, which is known by him to be a policyholder of plaintiff and which is located in Brown, Douglas, Franklin, Jackson, Jefferson, Marshall, Nemaha, Osage, or Shawnee County, Kansas, to discontinue, cancel, or not renew his or its policy, and to replace it with a policy issued by Reliant or any other insurance company; and defendant shall not solicit for any school district, which employs a policyholder of plaintiff and which is located in Brown, Douglas, Franklin, Jackson, Jefferson, Marshall, Nemaha, Osage, or Shawnee County, Kansas, to elect Reliant or any other insurance company to serve as its Section 125 Administrator provider, nor shall he attend or appear at the administrative meetings of those districts to market or promote the products or services of Reliant or any other insurance company.

No bond is required.

**IT IS SO ORDERED.**