SILVER, Etc. *v.* GOLDBERGER ET AL., ETC.

[No. 183, September Term, 1962.]

2

*Decided February 13, 1963.*

*Petition for revision of opinion filed February 20, 1963, denied March 8, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Daniel N. Silver* for appellant.

*Stanford G. Gann* and *Calman A. Levin,* with whom were *Levin, Gann* and *Hankin* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

The primary question presented by this appeal is whether a former employer may invoke the restrictive covenants contained in the contracts of employment between himself and former employees who are now competitors. Other questions involve the propriety of the actions of the chancellor with respect to the taking of depositions and the interpretation of certain rules of procedure. There is also a motion to dismiss the appeal as to a question presented by the appellant.

There are two appeals from the decree passed by the chancellor: that of the plaintiff-appellant (Daniel N. Silver, trading as Guilford Personnel Service) from the dismissal of his bill and amended bill for an injunction; and that of the defendants-appellees (Arnold Goldberger and Phillip Bryzman, individually and trading as Cross-Country Consultants) from the denial of their claim as individuals for wages or commissions.

In separate employment contracts, the plaintiff Silver, who owns and operates an employment agency, agreed to pay the defendants a commission based on the collectible placements they made. The contracts further provided that neither of the employees would compete with the employer for a period of two years from termination of employment. With respect to Goldberger, the limited area was "any community in which

Guilford Personnel Service has offices." As to Bryzman, the area was restricted to "a radius of fifty miles from any community in which Guilford Personnel Service has offices."

After having been employed for several years, the employees notified the employer one day that they were terminating their employment, and on the next day opened an employment agency of their own in Baltimore City two blocks from the office of their former employer in that city. About three weeks later, upon the filing of a bill for injunctive relief, a temporary order was issued restraining the defendants from continuing to operate their business (except as to contracts entered into three days prior to the filing of the bill) for the period of seven days.

In addition to an answer (admitting the undisputed facts but denying the material allegations and in which an accounting was sought for alleged unpaid wages or commissions), the defendants also filed a demurrer to the bill (subsequently withdrawn) and a motion to dissolve the restraining order.

The record discloses that the hearing, which had been set to consider the motion to dissolve, developed into a full scale trial of the case on the merits. According to the chancellor, there was no limitation on the character of the testimony produced, and the testimony was allowed to range beyond the limited question raised by the motion to dissolve and covered as well the prayers for the relief sought by the bill of complaint. Besides testifying in his own behalf at length and calling another witness who did likewise, the plaintiff called the defendants as adverse witnesses and examined them in detail. At the close of the evidence offered by their opponent, the defendants (pursuant to Maryland Rule 535) moved for a dismissal on the ground that upon the facts and the law the plaintiff had shown no right to relief. The motion was not then granted, but several days later, when the temporary restraining order was dissolved, the chancellor stated that the allegations of the bill were inadequate and that the proof was insufficient to entitle the plaintiff to the relief sought, but instead of dismissing the bill at that time, the chancellor allowed the plaintiff (if he desired) to amend the bill and present proof at another hearing to show (if he could) that he was entitled to injunctive relief because the relationship between the defendants and certain specified

clients of the plaintiff—which had arisen during the course of the employment of the defendants by the plaintiff—was such that the employees leaving the employment of the employer would establish a reasonable presumption that they would take the clients with them.

The plaintiff filed an amended bill and the defendants, in addition to a motion *ne recipiatur* and a demurrer, filed an answer, in which their claim for wages or commissions (contrary to the provisions of Rule 314 d 1 then in effect) was again included. But when the case came on to be heard on the amended bill and the answer thereto—after a postponement to allow the plaintiff to employ new counsel—the plaintiff, admitting that it was "pointless" to do so, declined to offer evidence on the only point that had been left open to him by the chancellor. And, while the plaintiff insisted that he still had a right "to proffer evidence of all counts of the bill of complaint," it is clear, from a remark made at the time by the chancellor, that what the plaintiff really wanted to do was to retry the case on his theory of the law rather than the theory suggested by the chancellor.

In the interim between the granting of postponement and the date set for the final hearing, the defendants received from the plaintiff written notice (by way of letters) of his desire to take their depositions. But, upon application therefor, the court granted the motions to quash the taking of such depositions. Since the notices were never filed in the lower court the official docket entries do not contain entries to that effect, yet the appellant (who is an attorney), with utter disregard of professional ethics and his obligations as an officer of the courts, undertook to include in the printed record extract what purported on their face to be official docket entries showing that such notices had been duly filed when in fact no such entries had ever been made by the clerk.

Toward the end of the case, the chancellor indicated that he would allow the unpaid wages or commissions the appellees claimed were due them (which the appellant admitted he owed to one or both appellees), but he ultimately declined to do so for the reason that the claim therefor was improperly raised in the pleadings.

The motion to dismiss the appeal, as to the contention of the appellant that the court erred when it quashed the taking of the depositions of the appellees, will be denied. While there was, as we have indicated, no excuse for the appellant to falsify the docket entries by representing that he had given the customary notice when he had not, there is enough in the record, as the motion to quash clearly demonstrates, to show that the appellant had given the appellees some sort of notice. But, because the appellant did not propose to take depositions until after he had called the appellees as adverse witnesses at the first hearing and had examined them in detail as to the merits of the case, the action of the chancellor in disallowing the taking of depositions was not improper.

We come now to the consideration of the appeal of the plaintiff-appellant. Although a number of inconsequential questions were also posed, the principal contention seems to be that the plaintiff should not have been required to amend the original bill for injunction. The suggestion of the chancellor was not improper. For the bill, as he correctly observed, did not adequately state a cause of action. Other than to relate the facts as they are in substance stated above, and to allege that the defendants were using the confidential information they had acquired during the course of employment for their own "purposes, uses and benefits" to the detriment of the plaintiff, there was nothing in the bill to support the claim of the plaintiff that he had suffered irreparable damage.

While a person may not be restrained from engaging in any business or vocation (useful to the community) which he is qualified to conduct or perform, the general rule is that restrictive covenants in a contract of employment, by which an employee as a part of his agreement undertakes not to engage in a competing business or vocation with that of his employer on leaving the employment, will be sustained if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public. 17 C.J.S., *Contracts,* § 254. See also Restatement, *Contracts,* § 515; *Deuerling v. City Baking Co.,* 155 Md. 280, 141 Atl. 542 (1928);

*Tolman Laundry v. Walker,* 171 Md. 7, 187 Atl. 836 (1936). But the cases draw a distinction between restraints that are justified and those that are not.

There is a line of cases which holds that *restraint is justified* if a part of the compensated services of the former employee consisted in the creation of the good will of customers and clients which is likely to follow the person of the former employee. And there is another line of cases which holds that *restraint is not justified* if the harm caused by service to another consists merely in the fact that the former employee becomes a more efficient competitor just as the former employer did through having a competent and efficient employee. See 6A Corbin, *Contracts,* § 1394.[1]

Contracts (containing restrictive covenants) of agents, salesmen, deliverymen and other employees, who, in operating a regular route, or in serving the same customers constantly, come into personal contact with the customers of the employer, usually come within the class or type of cases in which justification does exist. Such contracts have been held by this Court to be valid and enforceable in cases of a bakery route operator, *Deuerling v. City Bakery Co., supra,* a laundry route operator, *Tolman Laundry v. Walker, supra,* and milk and dairy products employees, *Western Maryland Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660 (1942).

On the contrary, the restrictive covenants in employment contracts between an employer and its employees were held invalid in *Tawney v. Mutual System of Md.,* 186 Md. 508, 47 A. 2d 372 (1946), a case that comes within the class or type of cases holding that there is no justification for restraint where a former employee does no more than become an efficient competitor of his former employer, and does not do so by exploiting his personal contacts with customers or clients of his former employer.

While the amended bill—although it contained considerably

---

1. Professor Corbin also mentions a third class of cases, not here relevant, holding that justification exists if the service involves a knowledge of trade secrets that might be divulged and confiscated in case of service to a competitor.

more detail as to the nature of the business—did little more than the original bill to state a cause of action, it is fairly apparent that the principal contention of the appellant is that his case comes within the class of cases in which there is justification for restraint. But the claim, for want of proof to support the theory, cannot prevail. Had the appellant been able to show that his former employees had or were likely to take some of his clients away from him, the situation might have been different, but he declined to offer evidence on the point, presumably because he could not. It is also apparent that the refusal of the chancellor to retry the points that had been previously tried and decided, was clearly not improper.

As we see it, the case at bar, on the record before us, falls squarely into the category of the *Tawney* decision rather than into the class embracing the personal contact cases. We hold therefore that the chancellor was right when he decreed dismissal of the bill and amended bill.

The contention of the defendants-appellees on the cross-appeal is that the chancellor erred when he declined to allow their claim for unpaid wages or commissions. We agree.

While the provisions of Rule 314 d 1, which were in effect when the claim for wages or commissions was included in the answer, specifically required that a counterclaim or cross-claim should be filed as a separate and distinct pleading, it is now permissible under a recent amendment of the rule to combine a counterclaim or cross-claim with a responsive pleading. Furthermore, the order adopting the rule which became effective January 1, 1962, besides providing that the amended rule should be applicable to all actions instituted on or after the effective date of the order, also provided that it should be applicable to all pending actions with respect to further proceedings therein insofar as *practicable*.

Regardless of whether it was proper to file the claim in a separate and distinct pleading or with a responsive pleading, the matter was procedural and we think it would have been more practicable to allow the claim in this proceeding rather than in a new action. Since the plaintiff-appellant did not have a vested right not to be subjected to the counterclaim, the chancellor should have allowed an appropriate amendment of

the pleading or a withdrawal and refiling of the answer in which the counterclaim had been asserted.

*Decree affirmed on original appeal and reversed and remanded for further proceedings on cross-appeal, appellant to pay the costs.*