47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOURCE SERVICES CORPORATION, Plaintiff-Appellant,
v.
Michael J. BOGDAN, Defendant-Appellee,
and
Chadwick Houck; Julius W. Schneider, Defendants.
 No. 94-1791.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1994.
Decided: Feb. 21, 1995.
 
 ARGUED: Mark Jay Swerdlin, SHAWE & ROSENTHAL, Baltimore, Maryland, for Appellant. Harry Patrick Stringer, Jr., MUDD, HARRISON & BURCH, Towson, MD, for Appellee. ON BRIEF: Stephen D. Shawe, Patrick M. Pilachowski, SHAWE & ROSENTHAL, Baltimore, MD; Daniel R. Price, STANWOOD & PRICE, Palo Alto, CA, for Appellant.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Source Services Corporation (Source) appeals the district court's granting of summary judgment in favor of Appellee Michael J. Bogdan on Source's various contract and tort claims arising from Bogdan's alleged breaches of his employment contract. We affirm.
 
 I.
 
 2
 Source, a national employment placement service, matches computer, accounting, finance, and engineering professionals (applicants) seeking jobs with employers (clients) in those fields. Source has operated a branch office in the Baltimore, Maryland, area since the mid-1970s. This case involves two of Source's four specialty divisions in its Baltimore office: Electronic Data Processing (EDP) and Virtual Help, a division providing temporary professional help.
 
 
 3
 For its own sales staff, Source trains EDP professionals, who become privy to information on applicants and clients collected and compiled by Source and maintained in extensive computer databases. Source keeps track of applicants' home addresses and telephone numbers, current work telephone numbers, educational backgrounds, current employment positions, prior experience, present salaries, acceptable positions, desired salaries, and commuting preferences. Source also stores information such as clients' hiring of EDP personnel, size of EDP staffs, nature of existing positions, hiring profiles, confidential descriptions of hiring criteria, key hiring decisionmakers, and interview techniques. Source also maintains job order lists describing clients' open positions and hiring requirements.
 
 
 4
 Deposition testimony by Source managers Robert Clawson and Jack Causa, however, indicated that Source obtained much of its information about applicants and clients from public sources. The managers testified that such sources include advertisements in the classified sections of newspapers, leads from company employees, directories of human resource personnel, and published books listing companies. Clawson and Causa also testified that Source personnel "drive by" companies and make cold calls to their placement officers and human resource persons. Furthermore, Source's databases include information on applicants and clients who have never used Source or whom Source has never contacted.[1]
 
 
 5
 To protect its information on applicants and clients, Source requires each management employee to execute an employment contract. Source hired Bogdan on January 4, 1982, and at the inception of his employment on April 19, 1982, he signed a contract that included post-termination restrictive covenants. Bogdan entered into another employment contract with Source on July 29, 1983, which was modified on August 8, 1984. This dispute involves the terms of the 1983 contract as modified in 1984.
 
 
 6
 The contract restricts Bogdan from making any independent use of Source's "trade secrets," a term defined very broadly and essentially covering all applicant and client information. Joint Appendix (JA) at 435. Bogdan also agreed that, for one year after his termination from Source, he would not engage in any personnel placement business in fields in competition with Source within 50 miles of any Source office to which he had been assigned during the one-year period before his termination (i.e., Baltimore). JA at 441. He further agreed that, for one year after leaving Source, he would not solicit, divert, or attempt to solicit or divert from Source the business of any client or applicant with whom he had any business contact regarding personnel placement while employed at Source. JA at 437.
 
 
 7
 Bogdan eventually attained the position of Managing Director of Source's EDP branch office in Baltimore. He was the top EDP official at that location, where he supervised all EDP sales efforts. Before voluntarily leaving Source on December 21, 1992, Bogdan applied for a trade name for an executive recruiting firm in Maryland.
 
 
 8
 Source alleges that Bogdan violated various covenants of his employment contract by contacting some of Source's clients immediately upon leaving Source. As evidence, Source lists fees Bogdan received in 1993 for placing applicants with former Source clients within 50 miles of its Baltimore office. Source also asserts that its Baltimore EDP sales plummeted from $510,000 in 1992 to $49,000 in 1993. Four companies that together conducted more than $40,000 worth of business with Source in 1992 shifted their entire business to Bogdan in 1993. Bogdan points out that he and three other recruiters terminated their employment with Source before 1993. Furthermore, Bogdan offers deposition testimony by Clawson that the large majority of Source's clients do not use Source exclusively to fill their hiring needs.[2]
 
 
 9
 On March 22, 1993, Source brought this diversity action against Bogdan and two other former employees of Source.[3] Source alleged that Bogdan: breached a covenant in his employment agreement not to compete with his former employer (Count One); breached a covenant not to solicit Source clients or divert business from Source (Count Two); breached a covenant not to use Source's trade secrets or confidential information (Count Three); breached the Maryland Uniform Trade Secrets Act (Count Four); breached his fiduciary duty of loyalty to Source (Count Five); interfered with Source's economic relations (Count Six); engaged in unfair competition with Source (Count Seven); and was unjustly enriched through his wrongful conduct (Count Eight).
 
 
 10
 Both parties moved for summary judgment.[4] On March 31, 1994, the district court granted Bogdan's motion for summary judgment on Source's tort claims, Counts Four through Seven. The court also allowed Source to amend the contract claims in its complaint.[5] On May 4, 1994, the court granted summary judgment in Bogdan's favor on Source's remaining counts.
 
 II.
 
 11
 We review summary judgments de novo under the same standard as the district court. Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir.1993). We affirm a district court's granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has instructed that "Rule 56(f) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ., 993 F.2d 386, 389 (4th Cir.1993). Under this standard, we must draw all permissible inferences from the underlying facts in the light most favorable to Source, the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Haavistola, 6 F.3d at 214.
 
 III.
 
 12
 We turn first to Source's breach of contract claims alleging that Bogdan competed with Source, solicited its customers, and used its trade secrets or other confidential information. The district court held that, given the nature of the applicants and clients, Source could not show by a preponderance of the evidence that it had a protectable interest justifying the enforcement of its restrictive post-employment covenants under Maryland law.[6] JA at 628-29. The court also found that Source presented no admissible evidence that Bogdan had used Source's confidential information or had exploited any personal contacts he had made while working for Source in order to take clients away from Source. JA at 629-30.
 
 
 13
 The district court followed Silver v. Goldberger, 188 A.2d 155 (Md.1963), a case involving an employment agency, in which the Court of Appeals of Maryland distinguished enforceable and unenforceable restrictive covenants. Under Silver, covenants are enforceable "if a part of the compensated services of the former employee consisted in the creation of the good will of customers and clients which is likely to follow the person of the former employee." Id. at 158. Covenants of employment contracts of "employees, who, in operating a regular route, or in serving the same customers constantly, come into personal contact with the customers of the employer, usually [are enforceable]." Id. Otherwise, employees are free to use the knowledge they have gleaned from their past employers to become more efficient competitors in the marketplace, as long as they do not exploit personal contacts with customers or clients of the former employer. Id. at 158-59. The Silver court held that the employment agency's restrictive covenants fell squarely within the unenforceable category because its employees had little personal contacts with clients and also because the agency did not show that its employees had or were likely to take clients with them. Id. at 159.
 
 
 14
 We agree with the district court that Silver governs this case and that Source has not produced sufficient evidence for its contract claims to survive summary judgment. We find Source's attempts to distinguish Silver and to invoke other cases unpersuasive. Source first argues that it satisfies an exception Silver anticipated: "[h]ad the [employer] been able to show that his former employees had or were likely to take some of his clients away from him, the situation might have been different." Id. Source, however, did not offer evidence that Bogdan's duties at Source involved the development of good will through personal contacts and continuous business relationships with clients who were more likely to follow him than to remain with Source.
 
 
 15
 Source next shifts the legal focus to cases in which Maryland courts have enforced restrictive covenants. In Holloway v. Faw, Casson & Co., 572 A.2d 510, 515 (Md.1990), the Court of Appeals of Maryland stated that "[p]ersons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." The Holloway court found that because a partner in an accounting firm was in a position to establish personal relationships with clients, the firm had a protectable interest that justified enforcing restrictive covenants in a partnership agreement. Id. at 516. Accountants, however, develop good will through continuous personal relationships with clients, unlike placement agencies, which frequently have nonexclusive relationships with their clients.[7] Furthermore, Silver remains vital under Holloway, which quotes and applies Silver 's discussion on categories of restrictive covenants. Id. at 515 (quoting Silver, 188 A.2d at 158).
 
 
 16
 Finally, Source's forays into the case law of other jurisdictions do not distract this Court from applying Maryland law as enunciated in Silver. Although three district courts found in favor of Source in disputes against employees involving similar covenants,[8] these unreported opinions focused on the nature of the information protected by the covenants, not the customer good will factor paramount in Silver. Apart from challenging the authority of these cases, Bogdan contends that Source has not demonstrated that it lost any business as a result of his conduct. Although Source's statistics suggest substantial client drift from Source directly to Bogdan, Source has not shown what protected information or personal contacts Bogdan used to pirate away clients. The district court concluded that the defecting clients listed by Source were all major industrial companies with whom any placement agent would naturally deal. JA at 630. We agree that company names are public information and do not rise to the level of a protectable interest under Maryland law.
 
 
 17
 Although courts in other jurisdictions have enforced similar restrictive covenants, we decline to enforce Source's covenants under Maryland law. Silver stands for the proposition that unless strong business or personal ties between employees and customers generate good will, employers do not have a protectable interest and should not be able to restrict efficient post-employment competition. See Silver, 188 A.2d at 158-59. Source simply has not demonstrated that Bogdan developed the requisite good will with clients while employed by Source. Furthermore, Source has presented no evidence that Bogdan used Source's confidential information or exploited his personal contacts to place skilled professionals with clients that had formerly used Source.
 
 
 18
 Therefore, we affirm the district court's granting of summary judgment against Source and in favor of Bogdan on the breach of contract claims in Counts One through Three of Source's amended complaint.
 
 IV.
 
 19
 Regarding Source's tort claims, the district court found that Source's evidence did not rise beyond mere conjecture that Bogdan did anything more than establish a competing business. JA at 507. We agree with the district court that Source's unsupported tort claims lack merit and can be disposed of more summarily than its contract claims.
 
 
 20
 Source alleges that Bogdan violated the Maryland Uniform Trade Secrets Act, Md. Com. Law Code Ann. Secs. 11-1201 to 11-1209 (1990 Rep. Vol.). Source, however, offers only the "fact" that Bogdan must have used Source's trade secrets or confidential information because he successfully placed professionals with Source's former clients. Clearly, the names and addresses of clients, particularly those of major industrial concerns, are public information. Source simply does not make any showing that Bogdan misappropriated or used Source's more sophisticated or confidential information.
 
 
 21
 Source also alleges that Bogdan breached his fiduciary duty of loyalty to Source by making arrangements to compete with Source before he left. This claim, however, assumes that the restrictive covenants are enforceable, which is not the case here. Furthermore, Source does not present any evidence that Bogdan "committed some fraudulent, unfair or wrongful act in the course of preparing to compete in the future." Maryland Metals, Inc. v. Metzner, 382 A.2d 564, 569 (Md.1978).
 
 
 22
 Source's interference with economic relations claim likewise fails. To establish such a claim under Maryland law, Source must show that Bogdan: (1) engaged in intentional and willful acts; (2) calculated to cause damage to Source in its lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of Bogdan; and (4) resulting in actual damage and loss. Natural Design, Inc. v. Rouse Co., 485 A.2d 663, 675 (Md.1984). Source failed to satisfy the elements of this business tort. First, because the restrictive covenants in Bogdan's employment contract were unenforceable, his post-termination conduct amounted to nothing more than lawful competition with a former employer. Second, Source presented no evidence that Bogdan interfered with any contract between Source and its clients or that he persuaded clients to follow him rather than remain with Source for the future placement needs.
 
 
 23
 Finally, Source alleges an equitable claim of unjust enrichment. Source essentially relies on the same allegations of Bogdan's wrongful conduct, particularly his appropriation of Source's trade secrets and confidential information, which we rejected above.[9] Because we find that Source's contract and tort claims do not establish any wrongful conduct on the part of Bogdan, Source's claim of unjust enrichment also must fail.
 
 
 24
 Source did not present sufficient evidence to support its various tort claims and therefore we affirm the district court's granting of summary judgment in Bogdan's favor on all of Source's claims.
 
 V.
 
 25
 For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of Bogdan.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Source has limited its claims to clients in the Baltimore area with whom it has done business. Appellant's Br. at 23
 
 
 [2]
 Clawson testified that "[w]e would like to have an exclusive on everything we work on. It's probably something we only achieve maybe one in ten or one in 20 times." JA at 534
 
 
 [3]
 One employee was dismissed without prejudice; the other settled with Source
 
 
 [4]
 On May 20, 1993, the district court denied Bogdan's motion to dismiss based on his allegation that Source had not met the $50,000 amount in controversy requirement for diversity jurisdiction. Upon de novo review of the record before us, we find that Source's amended complaint sufficiently alleges that Source could have recovered an amount greater than $50,000 and that the district court correctly denied Bogdan's motion to dismiss
 
 
 [5]
 Source's original complaint was based on a 1990 employment agreement with Bogdan that Source had "recalled." The district court found that because the 1990 agreement lacked consideration it had no effect on the 1983 contract as modified in 1984. JA at 505-06. Neither party appeals this determination
 
 
 [6]
 Neither party disputes that Maryland law applies to the contract in this case
 
 
 [7]
 Source's other examples of enforceable restrictive covenants in Maryland also can be distinguished on the ground that the employees in question, unlike Bogdan, generated good will through personal contacts with clients or customers. E.g., Gill v. Computer Equip. Corp., 292 A.2d 54 (Md.1972) (representative of manufacturers); Tuttle v. Riggs-Warfield-Roloson, Inc., 246 A.2d 588 (Md.1968) (insurance agent); Fowler v. Printers II, Inc., 598 A.2d 794 (Md. Ct. Spec.App.1991) (commercial printing sales personnel), cert. denied, 602 A.2d 710 (Md.1992)
 
 
 [8]
 See Source Servs. Corp. v. Polansky, C.A. No. 592CV00438 (D. Conn. Oct. 26, 1993); Source Servs. Corp. v. Johnson, C.A. No. 92-2719 (D.N.J. July 21, 1992); Source Servs. Corp. v. Gaul, C.A. No. 89-8826, 1990 WL 50819 (E.D. Pa. Apr. 20, 1990)
 
 
 [9]
 Source's unfair competition claim also relies on the unproven allegation that Bogdan used Source's confidential information. Thus, this claim remains merely one voice in a chorus of claims properly disposed of on summary judgment