767 A.2d 936

**LABOR READY, INC. et al.,**

v.

**Alan ABIS.**

**No. 79, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 2, 2001.

118

Gretchen N. Smith (George A. Nilson, Michael S. Poulos and Piper Marbury, Rudnick & Wolfe, LLP, on the brief), Baltimore, for appellants.

Max H. Lauten (Kramon & Graham, P.A., Baltimore, Scott M. Flicker and Paul Hastings, Janofsky & Walker, LLP, Washington, DC, on the brief), for appellee.

Argued before MURPHY, C.J., DEBORAH S. EYLER, and PAUL E. ALPERT, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

Labor Ready, Inc. and Labor Ready Northeast, Inc. (referred to collectively as "Labor Ready"), appellant, challenges an order of the Circuit Court for Baltimore City granting summary judgment in favor of Alan Abis, appellee, on Labor Ready's claim for breach of a non-compete provision of an employment contract between the parties. Labor Ready presents the following questions for review, which we have rephrased:

I. Did the circuit court err in concluding that Abis's conduct in soliciting potential customers was not a

violation of the territorial restriction set forth in the non-compete agreement?

II. Did the circuit court err in ruling that the non-compete agreement was unreasonable as a matter of law?

III. Did the circuit court err in granting summary judgment in favor of Abis even though he admitted violating the territorial restriction set forth in the non-compete agreement?

## FACTS AND PROCEEDINGS

Labor Ready is a national firm engaged in the business of providing temporary workers to the construction, landscaping, warehousing, and light industrial markets. In April 1998, Labor Ready hired Abis to work as the branch manager of its office at 3303 Annapolis Road, in Baltimore City. On March 18, 1998, before the start of his employment, Abis signed an "At Will Employment Contract" ("employment contract") with Labor Ready. The employment contract contained a non-compete provision that reads:

It is understood and agreed that the nature of the methods employed in [Labor Ready's] business is such that [Abis] will be placed in a close business and personal relationship with the customers of [Labor Ready]. Thus, during the term of this Employment Contract and for a period of one (1) year immediately following the termination of [Abis's] employment, for any cause whatsoever, so long as [Labor Ready] continues to carry on the same business, [Abis] shall not, for any reason whatsoever, directly or indirectly, for [himself] or on behalf of, or in conjunction with, any other person, persons, company, partnership, corporation or business entity:

(a) Call upon, divert, influence or solicit or attempt to call, divert, influence or solicit any customer or customers of [Labor Ready];

(b) Divulge the names and addresses or any information concerning any customer of [Labor Ready];

(c) Own, manage, operate, control, be employed by, partici-
pate in or be connected in any manner with the owner-
ship, management, operation or control of the same,
similar, or related line of business as that carried on now
by [Labor Ready] within a radius of ten (10) miles from
[Labor Ready's] office at which [Abis] was last em-
ployed; and

(d) Make any public statement or announcement, or permit
anyone else to make any public statement or announce-
ment that Employee was formerly employed by. or
connected with [Labor Ready].

The time period covered by the covenants contained
herein shall not include any period(s) of violation of any
covenant or any period(s) of time required for litigation to
enforce any covenant. If the provisions set forth are deter-
mined to be too broad to be enforceable at law, then the
area and/or length of time shall be reduced to such area and
time and that shall be enforceable.

Labor Ready discharged Abis in November, 1998. In Janu-
ary, 1999, Abis was hired by Preferred Labor, one of Labor
Ready's competitors in the temporary employment labor busi-
ness. Abis was assigned to work at Preferred Labor's Suit-
land office, in Prince George's County, which is more than ten
miles from the Annapolis Road office of Labor Ready. On
February 19, 1999, Preferred Labor transferred Abis to an
office it was about to open on Reisterstown Road, in Baltimore
City. That office is located within ten miles of Labor Ready's
Annapolis Road office. Abis worked at the Reisterstown Road
office of Preferred Labor for seventeen days. Before that
office opened for business, he was transferred back to Pre-
ferred Labor's Suitland office.

On March 30, 1999, Abis became the branch manager of
Preferred Labor's Essex office, in Baltimore County. That
office is more than ten miles from Labor Ready's Annapolis
Road office.

On April 12, 1999, Labor Ready filed a complaint against
Abis in the Circuit Court for Baltimore City alleging breach of

contract and seeking injunctive relief. Labor Ready alleged that Abis was violating the non-compete provision of the employment contract in that he was working for Preferred Labor at a location within ten miles of Labor Ready's Annapolis Road office. It sought an order enjoining Abis from engaging in competition with Labor Ready through employment or involvement with Preferred Labor in violation of the employment contract. The request for injunctive relief was taken before a master who stated, after holding a hearing, that she would recommend to the court that the injunctive relief be denied. At that point, Labor Ready withdrew its request for injunctive relief.

On July 2, 1999, Labor Ready filed an amended complaint, realleging the facts in support of its contract claim as set forth in its original complaint.[1] Thereafter, discovery, including the deposition of Abis, ensued.

In addition to the facts that we have recited, the facts adduced in discovery established that Abis had not solicited any customers of Labor Ready within a ten-mile radius of its Annapolis Road office. Abis had solicited and serviced new customers within that area and had hired workers who, while never having been associated with Labor Ready, nevertheless were located within the ten-mile radius.

Abis filed a motion for summary judgment. Labor Ready filed an opposition and cross-motion for summary judgment. In support of his motion, Abis argued that the language of the non-compete provision of the employment contract did not prohibit him from doing business with customers who had never been associated with Labor Ready, but were located within a ten-mile radius of Labor Ready's Annapolis Road office. He argued, in the alternative, that if the non-compete provision could be interpreted to prohibit him from doing so, it was unenforceable as overly broad and against public policy. In its cross-motion for summary judgment, Labor Ready

---

1. The amended complaint added Labor Ready Northeast, Inc., as a plaintiff.

argued that Abis had conceded that for seventeen days he had violated the non-compete provision; it further argued that Abis's solicitation of customers within ten miles of the Annapolis Road office constituted "operating" within the ten-mile radius.

The circuit court held a hearing on the motions and gave its ruling from the bench. The court ruled that with respect to the seventeen-day violation, no damages could be shown to have resulted from that technical breach. The court further ruled that the plain language of the non-compete provision did not prohibit Abis from working outside the ten-mile radius but dealing with new customers (*i.e.*, those who never had been customers of Labor Ready) inside that radius. Finally, the court ruled that if the language of the non-compete provision could be interpreted to mean that Abis could not deal with new customers within a radius of ten miles of Labor Ready's Annapolis Road office, even though he was working at an office outside of the ten-mile radius, the provision would be unenforceable as against public policy. The court granted Abis's motion for summary judgment and denied Labor Ready's cross motion for summary judgment. It reserved, however, on the issue of whether Labor Ready was entitled to recover attorney's fees under the employment contract.

On February 14, 2000, the circuit court issued a written order memorializing its rulings. Thereafter, on March 1, 2000, by stipulation and order of the court, Labor Ready's claim for attorney's fees was dismissed without prejudice. Labor Ready then noted a timely appeal.

Additional facts will be recited as pertinent to our discussion of the issues.

## STANDARD OF REVIEW

Maryland Rule 2–501(e), which governs motions for summary judgment, provides: "The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is

entered is entitled to judgment as a matter of law." In relying on a motion for summary judgment, the trial court must view the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Brown v. Wheeler,* 109 Md.App. 710, 717, 675 A.2d 1032 (1996). Yet, the nonmoving party may not rely on bare allegations or " 'a mere scintilla' " of evidence to defeat a motion for summary judgment. *Helman v. Kim,* 130 Md.App. 181, 193, 745 A.2d 451 (2000) (quoting *Barber v. Eastern Karting Co.,* 108 Md.App. 659, 672, 673 A.2d 744 (1996) (citing *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 738, 625 A.2d 1005 (1993))). " 'Thus, when a movant has carried its burden, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." ' " *Nerenberg v. RICA of Southern Md.,* 131 Md.App. 646, 660, 750 A.2d 655 (2000) (quoting *Beatty,* 330 Md. at 738, 625 A.2d 1005 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))).

In reviewing a trial court's grant of a motion for summary judgment, we engage in much the same analysis. If the trial court properly determined that no genuine dispute of material fact existed and the moving party was entitled to judgment as a matter of law, we then determine whether its ruling was legally correct. *Lynx, Inc. v. Ordnance Prods. Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974). In so doing, we review the material from the record and decide the same legal issues as the circuit court. *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994).

## DISCUSSION

### I & II.

Because the first two issues are intertwined, we shall discuss them together.

Labor Ready contends that the circuit court erred by granting summary judgment in favor of Abis because the undisputed facts established that Abis's conduct at Preferred

Labor's Essex office violated the non-compete clause. Specifically, Labor Ready argues that although the Essex office of Preferred Labor was more than ten miles from Labor Ready's Annapolis Road office, Abis nevertheless had dealings with new customers within the ten-mile radius, and that by doing so, he was "operating in the same line of business" as Labor Ready, in violation of paragraph 15(c) of the employment contract. Labor Ready further contends that its interpretation of the non-compete clause does not violate public policy because the clause was narrowly drawn to protect its trade secrets and customer base.

Abis responds that he was "operating" in the temporary labor business in Essex, outside of the ten-mile radius, and therefore did not violate the non-compete clause. In the alternative, Abis asserts that Labor Ready's interpretation of the non-compete clause is too broad to serve the business's legitimate interests and, therefore, violates public policy.

Both parties acknowledge that there is no evidence that Abis was soliciting customers of Labor Ready. The customers with whom Abis was dealing inside the ten-mile radius were new customers who were not associated with Labor Ready, but whom Labor Ready considered part of its potential customer base.

Paragraph 15(c) of the employment contract prohibited Abis from directly or indirectly "operat[ing]" the same line of business as Labor Ready "within a radius of ten (10) miles" of Labor Ready's Annapolis Road office. The parties agree that the outcome of this case hinges upon the meaning of the word "operate" in the non-compete clause. Although the parties disagree about the proper interpretation of that word, they each take the position that the language of the non-compete clause is unambiguous and its meaning is a question of law.

(i)

Ordinarily, we will interpret a contract under the laws of the state in which it was formed. The contracting parties may provide otherwise in the contract, however, "un-

less there is no reasonable basis for the choice, or the choice of law violates a fundamental policy of the State." *Lamb v. Northwestern Nat. Life Ins. Co.*, 56 Md.App. 125, 128, 467 A.2d 182 (1983) (citing *Kronovet v. Lipchin*, 288 Md. 30, 43, 415 A.2d 1096 (1980)).

In this case, the parties agreed, at paragraph 21 of the employment contract, that the contract would be "governed and construed in accordance with the laws of the State of Washington." Accordingly, we shall apply the laws of Washington in interpreting this contract. We note that we do so with no assistance from the briefs submitted by either party, both of which state that Maryland law and Washington law are the same and proceed to cite and discuss only Maryland cases. After conducting our own research, we agree that Maryland law and Washington law are not substantively at variance. Citations to Washington case law would have been helpful to us in reaching that conclusion, however.

 The touchstone of contract interpretation is the intent of the parties. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wash.2d 573, 844 P.2d 428, 432 (1993) (citing *Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222 (1990)); *Bonneville Power Admin. v. Washington Pub. Power Supply Sys.*, 956 F.2d 1497, 1505 (9th Cir.1992) (applying Washington law).

> "Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties."

*Berg*, 801 P.2d at 228 (quoting *Stender v. Twin City Foods, Inc.*, 82 Wash.2d 250, 510 P.2d 221 (1973)); *see also* Restatement (Second) of Contracts § 212 cmt. b (1981) (adding usages of trade and the course of dealing between the parties), *quoted in Berg*, 801 P.2d at 229. When a contractual clause is unambiguous, it is the function of the court objectively to

interpret its meaning. *Truck Center Corp. v. General Motors Corp.*, 67 Wash.App. 539, 837 P.2d 631, 634 (1992) (citing *Glesener v. Balholm,* 50 Wash.App. 1, 747 P.2d 475 (1987)).

Words used in a contract must be given their plain and ordinary meaning, unless the contract indicates otherwise. *Universal/Land Constr. Co. v. City of Spokane,* 49 Wash.App. 634, 745 P.2d 53, 55 (1987) (citations omitted). A contract "must be read as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation.'" *Eurick v. Pemco Ins. Co.,* 108 Wash.2d 338, 738 P.2d 251, 252 (1987) (quoting *E Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wash.2d 901, 726 P.2d 439 (1986)). "If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent." *Martinez v. Miller Indus.,* 94 Wash.App. 935, 974 P.2d 1261, 1266 (1999) (quoting *Interstate Prod. Credit Assoc. v. MacHugh,* 90 Wash.App. 650, 953 P.2d 812 (1998)).

Courts will enforce non-compete clauses so long as their terms are reasonable in light of the interests of the employer, the employee, and the general public. *E.g., Perry v. Moran,* 109 Wash.2d 691, 748 P.2d 224, 228 (1987) (quoting *Knight, Vale & Gregory v. McDaniel,* 37 Wash.App. 366, 680 P.2d 448 (1984)). By their nature, non-compete clauses violate the public policy against contracts in restraint of trade. *Wood v. May,* 73 Wash.2d 307, 438 P.2d 587, 589 (1968) (quoting *Racine v. Bender,* 141 Wash. 606, 252 P. 115 (1927)). Therefore, non-compete clauses "should be no greater in scope than is necessary to protect the business or goodwill of the employer." *Knight, Vale & Gregory,* 680 P.2d at 448, 452 (citing *Wood v. May,* 73 Wash.2d 307, 438 P.2d 587; *Central Credit Collection Control Corp. v. Grayson,* 7 Wash.App. 56, 499 P.2d 57 (1972)).

Whether a covenant is reasonable involves a consideration of three factors: (1) whether restraint is necessary for the protection of the business or goodwill of the employer, (2) whether it imposes upon the employee any greater restraint

than is reasonably necessary to secure the employer's business or goodwill, and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant.

*Id.* (citations omitted). This consideration is a question of law to be determined by the court. *Id.* at 451 (citing *Marquez v. UW*, 32 Wash.App. 302, 648 P.2d 94 (1982); *Alexander & Alexander, Inc. v. Wohlman*, 19 Wash.App. 670, 578 P.2d 530 (1978)).

 To recover for a breach of a non-compete clause, the plaintiff must prove that the provision imposed a duty, that the duty was breached, and that the breach was the proximate cause of the claimed damages. *See Northwest Indep. Forest Mfgs. v. Department of Labor & Indus.*, 78 Wash.App. 707, 899 P.2d 6, 9 (1995) (citing *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932); *Alpine Indus. v. Gohl*, 30 Wash.App. 750, 637 P.2d 998 (1981)). Thus, proof of the violation of a non-compete clause is not sufficient to make out a *prima facie* case; there must be proof that the plaintiff suffered harm as a result of the contract violation. *Riverview Floral, Ltd. v. Watkins*, 51 Wash.App. 658, 754 P.2d 1055, 1058 (1988) ("Lost profits are properly recoverable as damages when (1) they are within the contemplation of the parties at the time the contract was made, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty." (citing *Larsen v. Walton Plywood Co.*, 65 Wash.2d 1, 396 P.2d 879 (1964))). Damages arising from the breach of a covenant not to compete are especially difficult to establish. *Knight, Vale & Gregory*, 680 P.2d at 453 ("Harm resulting to one business from the competition of another business is difficult to estimate accurately." (citing *Mead v. Anton*, 33 Wash.2d 741, 207 P.2d 227 (1949))).

 Geographical restrictions in non-compete clauses must be well-defined and no greater than what is required to protect the employer's business or goodwill. *See Hebb v. Stump, Harvey & Cook, Inc.*, 25 Md.App. 478, 488, 334 A.2d 563 (1975) (discussing *Ruhl v. F.A. Bartlett Tree Expert Co.*,

245 Md. 118, 225 A.2d 288 (1967); *MacIntosh v. Brunswick,*
241 Md. 24, 215 A.2d 222 (1965)). Geographical restrictions
may be imposed to protect the developmental efforts expended
by the employers to develop employees with whom they
subsequently compete. *Perry,* 748 P.2d at 230. Because
geographic restrictions are more burdensome on employees
and the public than are non-solicitation restrictions, they are
more closely scrutinized. As one Washington court has noted:

> A covenant not to compete within a geographical area places
> greater restrictions on the employee than does a covenant
> not to service the former employer's client accounts.
>
> > The essential purpose of the post-employment restraint
> > ... is not to prevent the competitive use of the unique
> > personal qualities of the employee—either during or after
> > the relationship—but to prevent competitive use, for a
> > time, of information or relationships which pertain pecu-
> > liarly to the employer and which the employee acquired in
> > the course of employment.

*Id.* (quoting Blake, *Employee Agreements Not to Compete,* 73
Harv.L.Rev. 625, 647 (1960)).

### (ii)

As stated above, both parties take the position
that the pertinent language of the non-compete clause of the
employment contract is unambiguous. Whether a contract is
ambiguous is a question of law. *R.A. Hanson Co. v. Aetna
Ins. Co.,* 26 Wash.App. 290, 612 P.2d 456, 459 (1980); *see
General Tel. Co. of the Northwest, Inc. v. C–3 Assocs.,* 32
Wash.App. 550, 648 P.2d 491, 493 (1982) (citing *Ladum v.
Utility Cartage, Inc.,* 68 Wash.2d 109, 411 P.2d 868 (1966));
*accord Langston v. Langston,* 136 Md.App. 203, 226, 764 A.2d
378 (2000) (citing *Calomiris v. Woods,* 353 Md. 425, 434, 727
A.2d 358 (1999); *JBG/Twinbrook Metro Ltd. Partnership v.
Wheeler,* 346 Md. 601, 625, 697 A.2d 898 (1997); *Auction &
Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 341, 731
A.2d 441 (1999)). We review *de novo* the circuit court's
determination that the employment contract was unambigu-
ous. *Farmers Ins. Co. v. Grelis,* 43 Wash.App. 475, 718 P.2d

812, 813 (1986) (citing *Beedle v. General Investment Co.,* 2 Wash.App. 594, 469 P.2d 233 (1970)).

 A contract is ambiguous "when its terms are uncertain or capable of being understood as having more than one meaning." *Green v. Lupo,* 32 Wash.App. 318, 647 P.2d 51, 53 (1982) (citations omitted); *see Allstate Ins. Co. v. Hammonds,* 72 Wash.App. 664, 865 P.2d 560, 562 (1994) (noting that a contract is ambiguous when, "reading the contract as a whole, two reasonable and fair interpretations are possible") (citing *State Farm Gen. Ins. Co. v. Emerson,* 102 Wash.2d 477, 687 P.2d 1139 (1984); *Morgan v. Prudential Ins. Co.,* 86 Wash.2d 432, 545 P.2d 1193 (1976)); *accord Board of Educ. of Charles County v. Plymouth Rubber Co.,* 82 Md.App. 9, 26, 569 A.2d 1288 (1990). When there is a *bona fide* ambiguity in the contract's language or legitimate doubt as to its application under the circumstances, extrinsic evidence is admissible and the contract must be submitted to the trier of fact for interpretation. *Berg,* 801 P.2d at 229 ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.") (quoting Restatement (Second) of Contracts § 212(c)(1) (1981)); *accord Board of Educ.,* 82 Md.App. at 26, 569 A.2d 1288. Accordingly, unless the extrinsic evidence is undisputed or only one reasonable meaning can be ascribed to the language when viewed in context, summary judgment is not appropriate in a case involving interpretation of a non-compete agreement. *See Martinez,* 974 P.2d at 1266 ("Determining a contractual term's meaning involves a question of fact and examination of objective manifestations of the parties' intent.") (citing *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.,* 71 Wash.App. 194, 859 P.2d 619 (1993)).

In the case *sub judice,* Abis agreed, *inter alia,* not to directly or indirectly ... "operate ... participate in or be connected in any manner with the ... operation" of a line of business the same or similar to that of Labor Ready, "within a

radius of ten (10) miles" from Labor Ready's Annapolis Road office. The language of this non-compete clause leaves unclear what Abis can and cannot do within the area specified. It does not define what conduct constitutes "operating" or "being connected with operating" a temporary labor business. In the temporary labor market, "general employers" (such as Labor Ready and Preferred Labor), through their own employees, find temporary workers for other businesses (*i.e.*, "special employers").[2] In a typical transaction, the general employer either solicits or is contacted by the special employer to arrange for temporary workers to perform specified duties.

The non-compete provision at issue here limits where Abis (an employee of a general employer) may "operate" in the temporary services industry, but fails to specify what constitutes "operating" and *where* these acts of "operation" may occur. Does the provision prohibit Abis from recruiting temporary workers who are themselves located within the ten-mile radius? May he recruit them by telephone from outside the ten-mile radius if they are within the ten-mile radius? Is Abis prohibited from recruiting temporary workers who live inside the ten-mile radius to work for special employers outside of the ten-mile radius? Is he prohibited from dealing with special employers whose offices are located inside the ten-mile radius—even if Abis himself is not physically within the ten-mile radius? If Preferred Labor's staffers in the Essex office contact, solicit, and service special employers within the ten-mile radius, without any assistance from Abis, is

---

**2.** The Court of Appeals recently explained:

A general employer is an employer who transfers an employee to another employer for a limited period. A special employer is an employer who has borrowed an employee for a limited period and has temporary responsibility and control over the employee's work.... A temporary employment company is a general employer and the company to which an employee is assigned is a special employer.

*Temporary Staffing, Inc. v. J.J. Haines & Co.*, 362 Md. 388, 765 A.2d 602 (No. 54, Sept. Term, 2000, Jan. 11, 2001), n. 1 (citing *Whitehead v. Safeway Steel Prods.*, 304 Md. 67, 82–84, 497 A.2d 803; *Black's Law Dictionary* 544 (7th ed.1999)).

Abis still "operating" in violation of the non-compete clause when he acts as their manager?

Nothing in the employment contract answers these or any number of other hypothetical questions about the meaning of the operative language of the agreement and its scope. We do not know from the language of the contract, without resort to extrinsic evidence, whether office location is significant or irrelevant to operating a temporary labor business. In some businesses, the office is the focus of the operation, and where the office is located is for all intents and purposes where the business operates. In others, the location of the office may have no bearing on the focus of competitive endeavors. Whether office location is a defining point of reference in a geographic restriction in a non-compete clause depends upon the nature of the business. In the case *sub judice*, without any such context, the non-compete language of the employment contract is ambiguous. Therefore, it was not appropriate for the circuit court to grant summary judgment.

Labor Ready cites portions of Abis's deposition testimony to argue that Abis has conceded that its interpretation of the pertinent language is correct. Specifically, Labor Ready points out that when Abis was asked to define "day-to-day operation" in the temporary services industry, he testified: "It involved the acquisition of customers, the acquisition of employees, and the administration of the day-to-day paperwork as well as the fiscal [profit and loss] responsibility."

We disagree with this argument. Abis's testimony is itself unclear. More important, Labor Ready has viewed it in isolation, ignoring the fact that Abis filed an affidavit in support of his motion for summary judgment in which he stated that he believed that the non-compete clause only prohibited him "from working for a competing business located within a ten-mile radius" of Labor Ready's Annapolis Road office. Given that the language at issue is ambiguous, as a matter of law, the parties' subjective interpretations of the language constitute extrinsic factual evidence relevant to the meaning of the words. It will be for the trier of fact to decide

the substance of Abis's subjective interpretation of the language, and, if he has offered differing interpretations in the past, to make the necessary credibility judgment in doing so. *Accord Pittman v. Atlantic Realty Co.*, 359 Md. 513, 534–35, 754 A.2d 1030 (2000).

Abis argues that even if the non-compete provision is ambiguous, we should affirm the circuit court's ruling on the ground that an ambiguity in a contract should be construed against the drafter. We disagree. As we have explained, when the language of a contract is ambiguous, its meaning is a question of fact for decision by the fact-finder. Only if the fact-finder cannot resolve the ambiguity after considering extrinsic evidence may this rule of contract interpretation be applied. *See Weyerhaeuser Co. v. Burlington Northern, Inc.*, 15 Wash.App. 314, 549 P.2d 54, 58 (1976) ("If the court is uncertain of the parties' intentions after considering [parol evidence,] it should then be guided by the rule that ambiguous language in a deed should be construed to resolve the doubt against the grantor.") (citing *Hodgins v. State*, 9 Wash.App. 486, 513 P.2d 304 (1973); *Hess v. North Pac. Ins. Co.*, 67 Wash.App. 783, 785, 841 P.2d 767, 768 (1992)) (quoting *Transcontinental Ins. Co. v. Washington Pub. Utils. District's Util. Sys.*, 111 Wash.2d 452, 760 P.2d 337 (1988) (citing *Greer v. Northwestern Nat. Ins. Co.*, 109 Wash.2d 191, 743 P.2d 1244 (1987))).

Because the language of the non-compete clause is ambiguous, and its meaning therefore is not yet established, a determination of whether the clause comports with public policy is premature. As we have stated, whether a non-compete clause is reasonable and not violative of public policy depends on a careful balancing of the interests of the employer, the employee, and the public. Until the parameters of the non-compete provision are known, and it is established what conduct the clause prohibits, the legal question whether the provision comports with public policy cannot be answered. We can say at this point, however, that the most liberal interpretation of the term "operate"—that which would prohibit Abis and other

Preferred Labor employees under his control from having any contact whatsoever with temporary employees and employers located within the ten-mile radius—is not necessarily inconsistent with Washington public policy. Until a fact-finder considers the nature of the temporary labor industry and determines the meaning of the word "operate" in that context, however, we cannot determine whether the geographical restriction offends public policy.

### III.

Labor Ready contends that the circuit court erred in granting summary judgment in favor of Abis with respect to that aspect of Labor Ready's claim that concerned the seventeen days that Abis worked at the Reisterstown Road office of Preferred Labor. Labor Ready argues that it was undisputed that Abis breached the non-compete provision of the employment contract by working at that location. It argues further that Abis had acquired specialized knowledge about the operation of a temporary employment business during his period of employment with Labor Ready, and there was evidence that, during that seventeen-day interval, he used that knowledge to assist Preferred Labor in setting up its branch office on Reisterstown Road. For that reason, it argues, the circuit court should have denied Abis's motion for summary judgment and granted summary judgment to it on liability, with the issue of damages to be determined by a jury as trier of fact.

Assuming *arguendo* that Abis violated the non-compete clause by working in Preferred Labor's Reisterstown Road office for seventeen days, we disagree that the court erred in granting summary judgment to Abis. After nine months of discovery, Labor Ready failed to adduce evidence of any specific facts to show whether and how Abis used "confidential and proprietary knowledge, information, and training" of Labor Ready to Labor Ready's detriment. In responding to a motion for summary judgment, "[a]n adverse party may not rest upon mere allegations or denials, but must instead set forth specific facts showing the existence of a genuine issue for trial." *McBride v. Walla Walla County*, 95 Wash.App. 33, 975

P.2d 1029, 1031 (1999) (citations omitted). In the absence of evidence of damages, the circuit court properly granted summary judgment on this claim. *Riverview Floral, Ltd.*, 754 P.2d at 1059 (citing *Golf Landscaping, Inc. v. Century Constr. Co.*, 39 Wash.App. 895, 696 P.2d 590 (1984)); *accord Gooch v. Maryland Mechanical Sys., Inc.*, 81 Md.App. 376, 396–97, 567 A.2d 954 (1990) (affirming a trial court's entry of summary judgment because the claimant failed to present admissible evidence of damages).

Labor Ready argues that the evidence that, after training with it as a branch manager, Abis went to work for a competitor was sufficient to make damages a jury question. We disagree. It is well-recognized that "skills acquired by an employee during his or her employment do not warrant enforcement of a covenant not to compete." *Copier Specialists, Inc. v. Gillen*, 76 Wash.App. 771, 887 P.2d 919, 920 (1995) (citing, *inter alia, Silver v. Goldberger*, 231 Md. 1, 188 A.2d 155 (1963)). In other words, the training that Abis received during his tenure at Labor Ready, "without more, does not warrant enforcement of the covenant not to compete." *Id.*

Finally, Labor Ready argues that the circuit court should not have granted summary judgment on this claim because Labor Ready filed a motion to extend the discovery deadline, so it could have more time to generate evidence of damages. Labor Ready failed to properly raise this argument in the circuit court. Rule 2–501(d) provides:

> If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order that justice requires.

Although Labor Ready argued that more time for discovery was needed to uncover evidence of damages, it did not submit an affidavit to explain what measures it had taken to secure evidence of damages, why those measures were unsuccessful,

why more time for discovery was needed, and what it expected to garner from the continued discovery. Because Labor Ready did not properly raise this issue below, we will not review it. Md. Rule 8–131(a).[3]

**ORDER AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED BETWEEN THE PARTIES.**

---

**3.** We do not mean to suggest that, on remand, evidence that Abis worked for seventeen days at Preferred Labor's Reisterstown Road office will not be admissible.